379 F.2d 211
 In the Matter of A & S ELECTRIC CORP., Bankrupt.
Joint Industry Board of the Electrical Industry and Warren
C. Schwartz,Trustee in Bankruptcy of A & S
Electric Corp., Appellants.
 No. 355, Docket 30992.
 United States Court of Appeals Second Circuit.
 Argued April 11, 1967.
Decided June 22, 1967.
 
 Warren C. Schwartz, Brooklyn, N.Y., Trustee in Bankruptcy for A & S. Electric Corp.
 Harold Stern, New York City (Norman Rothfeld, New York City, on the brief), for Joint Industry Board of the Electrical Industry, appellant.
 Howard M. Koff, Department of Justice, Washington, D.C. (Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson and Joseph Kovner, Department of Justice, Washington, D.C., and Joseph P. Hoey, U.S. Atty. for Eastern District of New York, Brooklyn, N.Y., and Frank R. Natoli, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for the United States.
 Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 The Joint Industry Board of the Electrical Industry, which administers an Annuity Plan funded by employer contributions under a collective bargaining agreement between Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO, and four associations of electrical contractors in New York City, appeals from an order of Judge Rosling, affirming an order of Referee Warner in the Chapter XI proceeding of A & S Electric Corp. in the Eastern District of New York, denying priority status as 'wages * * * due to workmen' under section 64a(2) of the Bankruptcy Act, 70 Stat. 725 (1956), 11 U.S.C. 104a(2), to the Joint Industry Board's claim for unpaid contributions of $5114 to the Annuity Plan. We agree with Judge Rosling that this claim must be denied a wage priority under the Supreme Court's decision in United States v. Embassy Restaurant, Inc., 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), and we affirm his order.
 
 
 2
 The Annuity Plan of the Electrical Industry, as amended to July 1, 1964, requires each employer of workers represented by Local Union No. 3 to contribute $4.00 for each day's wages paid to each such worker. Each worker for whom such contributions are made becomes a Participant in the Plan, and he or his designated beneficiary is entitled to receive monthly payments of specified amounts, until the sums credited to his account are exhausted, upon his death, retirement from the industry at age sixty or over, permanent disability after working more than ten years for a contributing employer, or ceasing to be a Participant for any other reason. In addition, the beneficiary of a deceased Participant is entitled to death benefits out of the income of the Plan, if available, the amount varying with the length of his continuous participation in the Plan. The benefits payable under the Plan are expressly made nonassignable, and immune from attachment, garnishment, or other process. The trustees are authorized to invest and reinvest the funds of the Plan 'in their sole discretion,' and are made liable only for losses 'due to their wilful misconduct or fraud.'
 
 
 3
 Like the welfare fund contributions which the Supreme Court denied a wage priority in United States v. Embassy Restaurant, Inc., supra, contributions to the Annuity Plan 'are not 'due to workmen,' nor have they the customary attributes of wages.' 359 U.S. at 33, 79 S.Ct. at 557. The contributions in Embassy Restaurant were 'flat sums of $8 per month for each workman * * * without relation to his hours, wages or productivity.' 359 U.S. at 32, 79 S.Ct. at 556. Contributions to the Annuity Plan are likewise at a flat rate of $4.00 for each day's wages. Moreover, as in Embassy Restaurant, the contributions are payable directly to the trustees of the Annuity Plan, who are vested with exclusive management of its funds; so far as the record shows, '(a) workman cannot even compel payment by a defaulting employer.' 359 U.S. at 32, 79 S.Ct. at 556; cf. Local 140 Security Fund v. Hack, 242 F.2d 375 (2 Cir.), cert. denied, 355 U.S. 838, 78 S.Ct. 51, 2 L.Ed.2d 45 (1957).
 
 
 4
 The Court also observed in Embassy Restaurant that the Congressional purpose in enacting the wage priority was 'to provide the workman a 'protective cushion' against the economic displacement caused by his employer's bankruptcy,' and that the welfare fund contributions, which were applied to life insurance, sick benefits, and hospital and surgical plans,
 
 
 5
 'offer no support to the workman in periods of financial distress. Furthermore, if the claims of the trustees are to be treated on a par with wages, in a case where the employer's assets are insufficient to pay all in the second priority, the workman will have to share with the welfare plan, thus reducing his own recovery.' 359 U.S. at 33-34, 79 S.Ct. at 557.
 
 
 6
 The Joint Industry Board argues that the Annuity Plan does offer support to its Participants in periods of financial distress, because a worker who permanently ceased to be employed in the electrical industry ceases to be a Participant and is entitled to fixed monthly benefits. However, all indications are that relatively few workers whose employer becomes bankrupt will permanently leave the electrical industry. Moreover, the monthly benefits paid to a worker withdrawing from the electrical industry are fixed at $50.00 or (for workers leaving after January 1, 1965) $60.00 a month. Thus allowing a wage priority to Annuity Plan contributions might well reduce the amount of unpaid wages a worker could realize from bankruptcy, and would not increase the amount of benefits immediately payable under the Plan unless his account with the Plan was empty. The Annuity Plan therefore does not afford a meaningful protective cushion' against the economic dislocation caused by an employer's bankruptcy, and cannot be accorded a wage priority under Embassy Restaurant.[1]
 
 
 7
 It has been forcefully argued that contributions to funds like the Annuity Plan should receive a wage priority in bankruptcy. See e.g., United States v. Embassy Restaurant, Inc., 359 U.S. 29, 35, 79 S.Ct. 554 (1959) (Black, J., dissenting); Note, Union Retirement and Welfare Plans: Employer Contributions as 'Wages' Under Section 64a(2) of the Bankruptcy Act, 66 Yale L.J. 449, 460-461 (1957). But in light of the Supreme Court's decision in Embassy Restaurant, such an argument must be made to Congress, not to this court.
 
 
 8
 Affirmed.
 
 
 
 [1]
 The Joint Industry Board also relies on Sulmeyer v. Southern California Pipe Trades Trust Fund, 301 F.2d 768 (9 Cir. 1962), which granted a wage priority to contributions to a Vacation and Holiday Benefit Fund. But that decision is clearly distinguishable in any event, as it rested on the facts that vacation pay had already been held entitled to a wage priority, see, e.g., United States v. Munro-Van Helms Co., Inc., 243 F.2d 10 (5 Cir. 1957), that taxes were withheld from employees on contributions to the Fund, and that the Fund established a separate savings account for each employee