## JOINT INDUSTRY BOARD OF THE ELECTRICAL INDUSTRY et al. v. UNITED STATES.

No. 616.   Argued March 25, 1968.—Decided May 20, 1968.

*Harold Stern* argued the cause for petitioners. With him on the brief for petitioner Joint Industry Board of the Electrical Industry was *Norman Rothfeld.* *Max Schwartz* filed a brief for petitioner Trustee in Bankruptcy of A & S Electric Corp.

*Lawrence G. Wallace* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Rogovin, Harris Weinstein,* and *Crombie J. D. Garrett.*

*J. Albert Woll, Laurence Gold,* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging reversal.

MR. JUSTICE WHITE delivered the opinion of the Court.

Section 64a (2) of the Bankruptcy Act, 30 Stat. 563, 11 U. S. C. § 104 (a)(2), grants priority over the claims of other creditors to "wages . . . due to workmen, . . ." the priority being limited to $600 and to wages earned within three months before the commence-

ment of the proceedings.[1] The question before us is whether priority under § 64a (2) must be accorded to an employer's unpaid contributions to an employees' annuity plan established by a collective bargaining contract. The referee and the District Court denied the priority and the Court of Appeals affirmed. *In re A & S Electric Corp.*, 379 F. 2d 211 (C. A. 2d Cir. 1967). We granted certiorari, *sub nom. Joint Industry Board of the Electrical Industry* v. *United States*, 389 U. S. 969 (1967). We affirm the judgment.

The Annuity Plan of the Electrical Industry in New York City was established by a collective bargaining agreement between Local Union No. 3, International Brotherhood of Electrical Workers, AFL–CIO, and four associations of electrical contractors. The plan covers all employees in the bargaining unit represented by the union and is funded by employer contributions of "Four Dollars ($4.00) per day for each day worked or each holiday for which payment is received by his employees . . . ." Payments are made to trustees who are empowered to collect and administer the contributions under the provisions of the plan. These trustees are the petitioners here. Contributions received by the

---

[1] Section 64a, 30 Stat. 563 (as amended by Act of June 22, 1938, 52 Stat. 874, and Act of July 30, 1956, 70 Stat. 725), 11 U. S. C. § 104 (a), provides in relevant part:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; and for the purposes of this clause, the term 'traveling or city salesman' shall include all such salesmen, whether or not they are independent contractors selling the products or services of the bankrupt on a commission basis, with or without a drawing account or formal contract . . . ."

trustees are credited to the account of the individual employees but are "payable to him only as hereinafter provided," namely, upon death, retirement from the industry at age 60, permanent disability, entry into the Armed Forces, or ceasing to be a participant under the plan. Death benefits are paid only out of income, if available, and other benefits, though they may be payable in installments, will at a minimum return to the employee the total of the contributions credited to his name, without interest.

A & S Electric Corporation, an employer liable for contributions to the annuity plan, was adjudicated a bankrupt in 1963. The Joint Industry Board filed a claim which included $5,114 representing payments under the plan which fell due but were unpaid during the three months prior to the commencement of the proceedings. Priority for this amount was asserted under § 64a (2). The United States, with a fourth-class priority claim for unpaid taxes, objected to the allowance of the Joint Board's priority claim. The referee and the courts agreed with the United States, holding that payments due to the Joint Board were not wages due to workmen, relying for this conclusion principally upon *United States* v. *Embassy Restaurant, Inc.,* 359 U. S. 29 (1959).

We agree that *Embassy Restaurant* controls this case. There the claim was for unpaid employer contributions to a welfare fund, the contributions being $8 per month for each full-time employee; the fund provided life insurance, weekly sick benefits, hospital and surgical payments, and other advantages for covered employees. That claim, the Court held, was not entitled to § 64a (2) priority because payments to such a welfare fund did not satisfy the manifest purpose of the priority, which was "to enable employees displaced by bankruptcy to secure, with some promptness, the money directly due to them in back wages, and thus to alleviate

in some degree the hardship that unemployment usually brings to workers and their families." 359 U. S., at 32.[2] The contributions involved there were payable to trustees, not to employees, and were disbursable to employees only on the occurrence of certain events, not including the bankruptcy of the employer. Neither the contributions nor the plan provided any immediate support for workmen during the period of financial distress.

The case before us concerns employer contributions to the welfare fund which are similarly not due the employees and never were; they were payable only to the trustees, who had the exclusive right to hold and manage the fund. Though the contributions were credited to individual employee accounts, nothing was payable to employees except upon the occurrence of certain events. Until death, retirement after age 60, permanent disability, entry into military service, or cessation of participation under the plan, no benefits were payable. Further, as the referee pointed out, the employee could not assign, pledge, or borrow against the contributions, or otherwise use them as his own.[3] Quite obviously the annuity fund was not intended to relieve the distress of temporary un-

---

[2] The cases in the lower courts are in agreement as to the purpose of § 64a (2). See 3 Collier on Bankruptcy ¶ 64.201, at 2112, nn. 7–9 and related text (14th ed., 1967).

[3] The plan also provides that no person claiming by or through any participant shall have any right, title, or interest in or to the annuity fund. Section 9 (f) of the plan imposes additional limitations: "The benefits payable to Participants or beneficiaries under this Plan cannot be assigned and shall not be liable to attachment, garnishment or other process, and shall not be taken, appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of the Participant or of any beneficiary or next-of-kin who may have a right thereunder, either before or after payment."

It seems agreed in this case that the employer contributions to the fund are not taxable to the employee at the time they are made, but only when later received as benefits.

employment, whether arising from the bankruptcy of the employer or for some other reason. Hence, if *Embassy Restaurant* is to be followed, the unpaid contributions in this case do not satisfy the fundamental purpose of the § 64a (2) priority for wages due to workmen.

Nor are we inclined to overrule *Embassy Restaurant*'s construction of § 64a (2). This is a matter more appropriately left to the Congress, which has not infrequently given attention to § 64a of the Bankruptcy Act and to the priorities it creates.[4] The latest amendments to § 64a occurred in 1966, in the Acts of July 5, 1966, 80 Stat. 268 and 80 Stat. 271. Although the section was completely re-enacted in 1967,[5] § 64a (2) was left unchanged despite the fact that in every Congress since *Embassy Restaurant* bills have been introduced to overrule or modify the result reached in that case.[6]

Despite the general policy of the Bankruptcy Act to distribute assets of the estate equally to creditors, the priorities established in § 64a give priority to wages due workmen up to $600 if earned within three months prior to bankruptcy. Other unpaid wages are allowable as general claims but are not entitled to priority. If delinquent contributions to welfare and annuity funds providing deferred benefits to employees were to have equal priority with wages payable directly to employees, the maximum payable immediately and directly to employees would be reduced whenever individual wage

---

[4] The history of § 64a (2) is dealt with in both the majority and dissenting opinions in *United States* v. *Embassy Restaurant,* 359 U. S. 29 (1959). For a more complete consideration see 3 Collier on Bankruptcy ¶¶ 64.01, 64.201 (14th ed., 1967).

[5] Act of November 28, 81 Stat. 511.

[6] H. R. 2076, 90th Cong., 1st Sess. (1967); H. R. 991, 89th Cong., 1st Sess. (1965); H. R. 1784, 88th Cong., 1st Sess. (1963); H. R. 66, 88th Cong., 1st Sess. (1963); H. R. 2274, 87th Cong., 1st Sess. (1961); and H. R. 9831, 86th Cong., 2d Sess. (1960).

claims approached $600 or whenever the assets of the estate would not permit all wage claims to be paid in full. Also, increasing the amounts payable to second priority creditors would reduce the assets available for distribution to lower priority claimants and general creditors, including wage claimants not entitled to priority.[7] *Embassy Restaurant* was decided nine years ago. If there is still any question as to whether claims for unpaid contributions to provide deferred benefits to employees should share the assets of bankrupts with general creditors or should be entitled to the limited priority granted wages due to workmen, any new resolution of that question should come from Congress.

*Affirmed.*

MR. JUSTICE FORTAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BRENNAN join, dissenting.

I do not agree that *United States* v. *Embassy Restaurant, Inc.*, 359 U. S. 29 (1959), controls this case. I believe the employer's unpaid contributions to the employees' annuity plan are "wages . . . due to workmen" within § 64a (2) of the Bankruptcy Act. Those contributions accrued and unpaid within three months before the commencement of the bankruptcy proceedings are entitled to the statutory priority.

In this case, the employees and the employer agreed, in a collective bargaining agreement, that the employer would compensate each employee with stipulated wages and, additionally, $4 per day "for each day worked or each holiday . . . ." The latter sum, instead of being

---

[7] It is instructive that workmen's compensation claims were not provable in bankruptcy until 1934, when they were given a seventh priority. In 1938 the priority for compensation claims was abolished. Moreover, taxes and Social Security contributions which are withheld from wages are entitled to a fourth priority as taxes rather than a second priority as wages.

paid directly to the employees, was remitted to trustees of an annuity plan. In the accounts of the plan, the sum remitted for each employee, and measured by his days of work, was credited to that employee. The employee was entitled to receive the sum credited to his account upon retirement from the industry at age 60, death, permanent disability, entrance into the Armed Forces, or ceasing to be a participant under the plan by leaving the electrical industry or by accepting employment with some electrical company that is not covered by the collective bargaining agreement.

It is unmistakably clear (1) that the sums in question were to be paid as part of the wage bargain between employer and employee; (2) that the sum due each employee was specifically related to and measured by his work; (3) that the sum which each employee earned was accounted for separately and individually; he was entitled to the amount paid to the trustee on account of his individual labor; and (4) that inevitably, as sure as death, there was to come a point of time when the sum remitted to the trustee on account of each individual's work would be paid to that individual or his heirs.

In my judgment, it is impossible to distinguish, on the basis of the purpose of the priority provisions of the Bankruptcy Act, between these payments to the annuity plan and direct payments to the employee for his labors. The Court, however, holds that payments to the plan do not satisfy the "manifest purpose of the priority," as that purpose was explained in *Embassy Restaurant*. This purpose, the Court says, was to enable employees, upon the bankruptcy of their employer, promptly to secure money directly due them in back wages and thereby to alleviate the hardship that unemployment brings. *Embassy Restaurant* demonstrates, the Court says, that since the contributions to the annuity plan were not immediately payable to the em-

ployees upon bankruptcy, they do not fall within the definition of "wages" for priority purposes.

But the present case is materially different from *Embassy Restaurant.* In that case, the employee was never entitled to receive the sums which were paid into the fund on account of his labor. These sums and the sums paid by the employer for all other employees were used to provide life insurance, sick benefits, hospital and surgical payments, and other benefits. An employee was never entitled to demand and receive payment of sums that he had earned. These sums were not credited to him to be paid upon his death or retirement or other contingencies.

In a dissenting opinion in that case, MR. JUSTICE BLACK (joined by THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS) argued that the majority misconceived the nature of the payments into the fund in *Embassy Restaurant* and the purpose of the priority for wages. But we need not quarrel with the Court's conclusions in *Embassy Restaurant,* for purposes of the present case. Here, it is entirely clear that the sums paid and payable into the fund were payable to the individual employee. They were his. They were part of his wages. Only the time of receipt was deferred until retirement at age 60, separation from the industry, death, etc.

There is nothing whatever in § 64 to indicate, as the Court would have us believe, that "wages" lose their priority position if they are not immediately payable upon the event of bankruptcy. There is no basis whatever, except this Court's *ipse dixit* in this case, to say that the priority is available only to provide *"immediate* support for workmen during the period of financial distress." *Embassy Restaurant* is not authority for this. *Embassy Restaurant* is authority for the proposition that when the "wages" are never payable to the employee, but benefit him only through providing life insurance or

various types of services, the priority is not applicable. That is not the present case.

I take it that the purpose of the "wages" priority— just as in the case of all other priorities—is to give a preferred status to claims deemed particularly meritorious, so that the chances that the claimant will recover the sums due him on such claims will be enhanced. "Wages . . . due to workmen" are in this category, as are other claims such as costs of administering the bankruptcy estate and taxes owed to the United States or any State. The lower court cases which the majority claims are "in agreement" as to the purpose of the "wages" priority [1] are probably not in agreement with each other at all and certainly not in agreement with the majority's restrictive definition of that purpose. *In re Lawsam Electric Co., Inc.,* 300 F. 736 (D. C. N. Y.), Judge Learned Hand said: "The statute was intended to favor those who could not be expected to know anything of the credit of their employer, but must accept a job as it comes, to whom the personal factor in employment is not a practicable consideration." *In re Estey,* 6 F. Supp. 570 (D. C. N. Y.), it was said that "the intention of Congress was plainly to give special protection to a class of wage-earners who generally have no substantial savings or other reserves to fall back on in case of adversity and therefore cannot afford to lose." Certainly neither of these statements, which the majority cites in support of its definition of the purpose of the "wages" priority, constitutes authority for the proposition that the priority was intended only to alleviate the hardship caused by unemployment following immediately upon the bankruptcy of an employer. As a matter of fact, recognizing the priority does not assure immediate payment. Payment is made upon interim or

---

[1] See *ante,* at 227, n. 2.

final distribution of the estate. Priority merely increases the prospects of recovery.[2]

The Court's decision in this case, in my opinion, deprives the workers here concerned of the protection which Congress accorded their claims. We should reverse the judgment below.

---

[2] Even if I were to accept the majority's definition of the purpose of the "wages" priority, I still could not agree with the decision to affirm. For the majority indulges in a major, unexplained, assumption with which I do not agree: the majority assumes, without any basis that I can find in the record or anywhere else, that upon the bankruptcy of an employer an employee is likely to suffer the hardship of unemployment yet unlikely to suffer the hardship of accepting a job outside the electrical industry or with an employer who is not covered by the collective bargaining contract and annuity plan. Of course, if an employee does choose, upon the bankruptcy of his employer, to seek work with an employer not covered by the contract, he ceases to participate in the annuity plan and may, under the terms of that plan, claim the monies that have accrued in his account. In this plausible and, I would suspect, common situation, the employee receives his annuity account "immediately" after the bankruptcy. I see no significant difference—and certainly the majority suggests none—between payments that may alleviate the hardship of unemployment caused by bankruptcy and payments that may alleviate the hardship of unattractive employment after a discharge caused by bankruptcy.