IN RE CLEVELAND FREIGHT LINES, INC.

(No. B70-87—Decided November 10, 1970.)

United States District Court for Northern District of Ohio, Eastern Division.

*Mr. Nelson G. Karl,* for claimants.
*Mr. Theodore R. Spilka,* for Cleveland Freight Lines, Inc.

WILLIAM J. O'NEILL, Referee in Bankruptcy. This matter is before the court on a motion to determine claims, and the objection of the trustee to the allowance of said claims as wage claims.

Proofs of claims in bankruptcy were filed by approximately forty-eight employees of Cleveland Freight Lines, Inc., a petitioner under Chapter XI of the United States Bankruptcy Act. These claimants asserted that their claims were entitled to classification as "wages" pursuant to Section 64(A)(2) of the Bankruptcy Act. It was established by the evidence that all the claimants were members of the Ohio Teamsters Credit Union, Inc. Each of the claimants had entered into a written authorization with the Credit Union for the deduction of an amount of money from the weekly paycheck of claimant, said payroll deductions to be paid over to the Credit Union by the employer, Cleveland Freight Lines. The authorizations for payroll deductions entered into between the claimants and the Credit Union were then forwarded to the employer, Cleveland Freight Lines. Cleveland Freight Lines thereupon filed the authorizations and adopted the necessary procedure to make the payroll deductions accordingly. The monies so deducted from the employee's paycheck were forwarded to the Credit Union at monthly intervals and the Credit Union then proceeded to credit the savings account of each of said claimants with the amount of the deposit received from the employer.

There was testimony from Albert Young, Treasurer of the Credit Union, that in some instances the monies remained in the savings account of the employee, in other instances monies were withdrawn by the various employees of Cleveland Freight Lines from their Credit Union Savings account and on other occasions monies were transferred directly from the savings account to a loan account at the Credit Union. But all these transactions occurred after the monies were deposited in the respective savings accounts following receipt by the Credit Union. From the time the employer forwarded said payroll deductions to the Credit Union it lost all control or dominion of said funds and had no further responsibility for such funds. Further the employer had no knowledge of how the monies were applied, transferred or distributed, as these transactions were private between the employee and the Credit

Union. The evidence established that Cleveland Freight Lines was not a signatory or a party to the payroll withholding agreement entered into between the Credit Union and claimants.

Further, the evidence established conclusively that the entire payroll withholding arrangement was under the exclusive control of the employees of Cleveland Freight Lines. There was testimony from Beverly Rust, the financial secretary of Cleveland Freight Lines, that from time to time, employees of Cleveland Freight Lines actually raised the amount of the payroll withholding, lowered the amount, and even cancelled the arrangement for payroll withholding altogether. Miss Rust testified that at all times, Cleveland Freight Lines accepted the instructions of its employees as to any changes regarding their payroll withholding plan with the Credit Union.

The evidence established that the aforedescribed payroll withholding arrangements had continued over an extensive period of time. The evidence established further that during the weeks of December 5, 12, 19, and 26 in the year 1969, and the weeks of January 2 and 9 in the year 1970, monies were deducted from the wages of the claimants for deposit in the Credit Union, but not paid over to the Credit Union by Cleveland Freight Lines. The claimants contend that they are entitled to said monies as part of their wage claims pursuant to Section 64(A)(2) of the Bankruptcy Act. The trustee in bankruptcy contends that at such time that the monies were deducted from their wages, the claim was no longer the claim of the employees' but the claim of the Credit Union and that the said monies lost their identity as "wages" and thus were not entitled to any wage preferences.

Although no precedent cases were presented or discovered involving the precise factual matter before us, three cases bearing some similarity to the case at issue were previously decided by the United States Supreme Court. The case of *McKey* v. *Paradise*, 299 U. S. 119, 81 L. Ed. 75, 57 S. Ct. 124, was decided in 1936. This was a claim presented by an employees' welfare organization for

membership fees and weekly dues which had originally been deducted from wages of employees. The claim was before the court on claimants' theory of a "constructive trust." The court rejected the theory and disallowed the claim was as a wage claim. It found that at the time monies were withheld from the employees, the employer made the appropriate bookkeeping entries crediting the said monies to the account of the welfare association, although the funds were never actually transferred out of the employer's account into the welfare association account. The court held 'hat the agreement for the employer to withhold monies from wages and pay same to the welfare association was completed at the time the bookkeeping entries were made, but since the money was never segregated into a special fund, it was not possible to trace the trust funds. Further, the court concluded that the bankrupt company was the debtor of the welfare association and not of the employees.

The case of *United States* v. *Embassy Restaurant, Inc.*, 359 U. S. 29, 3 L. Ed. 2d 601, 79 S. Ct. 554, was decided in 1959. The issue in that case was whether contributions by an employer to a union welfare fund, required under the terms' of a collective bargaining agreement, were entitled to priority as being wages. The court found that the contributions were not wages for the reason that the amounts assessed bore no relationship to hours, wages or productivity. Further the court recognized that the contributions were not to the workman but to the trustee of the welfare fund and that the workman had no legal right in or to the contributions.

The most recent case decided by the court was *Joint Individual Board of the Electrical Industry* v. *United States*, 391 U. S. 224, 20 L. Ed. 2d 546, decided in 1968. The facts in that case involved an employer's contributions to an employees' annuity plan established by a collective bargaining agreement. The employer was required to contribute $4.00 per day for each employee. The contributions were not payable to the employee but to a trustee who had the right to hold and manage the fund. The em-

ployee could not assign, pledge, or borrow against the fund. The court concluded that the contributions did not meet the definition of wages for the reason that the monies were due the trustee and not the employee and for the further reason that the employee exercised no dominion over said monies and had no right to assign, pledge or borrow.

The case at bar is distinguished from the foregoing cases in several respects. Firstly the claims herein were made by each individual employee rather than by a trustee. Secondly the monies involved here were part of the wages earned by the employee and deducted from his actual paycheck rather than an assessment in addition to wages. But perhaps most persuasive of all is the fact that at all times during which said funds were in the hands of the employer, the employees retained full and sole dominion over said funds. The employees could increase or reduce the deduction, or they could cancel the deduction in its entirety. The sole function of the employer was to act as a conduit or pipeline from the employee to the savings account of the employee. The arrangement did not involve a trusteeship but was merely a service or convenience for the employees. The employer had no obligation whatsoever to the Credit Union other than to pay over certain monies to the Credit Union as requested by its employees.

There is no dispute that the monies in question were originally wages. We are faced only with the question of whether they lost their identity as wages at any time while in the employer's possession. In Collier on bankruptcy, Fourteenth Edition, Volume 3A, page 2117, the following statement is set forth: "The term wages as used in this section (Section 64(A)(2)) has received a very liberal construction." This court has already found that at all times the claimant employees controlled the monies deducted from their wages. This is significant in determining whether said wages lost their identity as wages while being held by the employer. The employee and the Credit Union are the only signatories to the payroll withholding agreement. Until said funds are transferred to the Credit Union, they continue to retain their identity

as wages. From the testimony of the company, it is clear that while the employer possesses these monies, the funds are under the full control and dominion of the employee as the employee may instruct the employer not to pay the money over to the Credit Union but to pay said monies to the employee himself. In effect the proofs of claims filed by the claimants herein constitute such a change of instructions since the payroll deductions are still in the hands of Cleveland Freight Lines. Therefore the claims of the claimants herein are hereby allowed as wage claims providing that said monies were earned within ninety days of the filing of the petition in bankruptcy and further providing that the total amounts claimed as wages by each claimant do not exceed the statutory limitations set forth in Section 64(A)(2) of the Bankruptcy Act. It is ordered that the claimants, trustee and Cleveland Freight Lines review the payroll records of the company to determine the specific amounts of money due each of the claimants herein within the limitations of Section 64(A)(2). It is the order of this court that the amounts so determined for each of the claimants herein shall be allowed as wage priority claims. However, in determining said amounts, all monies previously paid as priority wage claims shall be computed together with the claims herein allowed. Any part of said claims exceeding the maximum allowance of six hundred dollars shall be treated as a general claim.