In re GROWERS SEED ASSOCIATION, Debtor.

Don Lee KEIM, Plaintiff,

v.

GROWERS SEED ASSOCIATION, Defendant.

Bankruptcy No. 582–00025.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 11, 1985.

Don Lee Keim, pro se.

Thomas J. Griffith, Lubbock, Tex., for defendant.

## MEMORANDUM AND ORDER ON TRUSTEE'S OBJECTION TO CLAIM

BILL H. BRISTER, Bankruptcy Judge.

Don Lee Keim, a former employee of Growers Seed Association, Debtor, filed proof of claim in the sum of $3,306.38, reflecting his expenses in moving to Lubbock for employment with Growers Seed Association. He seeks priority treatment for the claim as a wage claim under § 507(a)(3) of the Code. The following summary constitutes findings of fact and conclusions of law on the trustee's objection to priority status for Keim's claim.

The relevant facts are undisputed. Growers Seed Association had recruited Keim for employment as an agricultural expert. As an inducement to the employment Growers Seed Association agreed to pay the reasonable expenses incurred by Keim in moving from South Dakota to Lubbock. On July 10, 1981, the director of research for Growers Seed Association wrote a letter to Al's Transfer and Storage, Inc. in Brookings, South Dakota, acknowledging receipt of estimate on cost of moving the household articles of Keim to Lubbock, Texas, authorizing that moving company to perform those moving services, and agreeing to pay the cost of the move when billed. On August 3, 1981, Keim's household articles were delivered to Lubbock,

Texas, by Al's Transfer and Storage, Inc., a representative of Allied Van Lines, and on August 26, 1981, Allied Van Lines issued its invoice and billed Growers Seed Association for the Keim move in the sum of $3,306.38. Growers Seed Association did not pay those charges and in November 1981 Keim was billed for the move by Allied Van Lines. On a date not reflected by the record Keim did in fact pay the moving company for those expenses.

Growers Seed Association filed petition for order for relief under Chapter 7 of Title 11, United States Code on February 19, 1982. Its schedules reflect that it had commenced business operations in July 1981 and terminated those operations on December 8, 1981. Further its schedules acknowledged that it had agreed to pay Keim's moving expenses to Lubbock and included Keim on a list of creditors whom the debtor contended are entitled to priority treatment.

The trustee challenged the proof of claim filed by Keim on three bases. First, the trustee contends that "moving expenses" are not within the wage priority. Next the trustee contends that the moving expenses, even if they fell within the wage claim, were incurred more than ninety days prior to cessation of business by the debtor and thus are outside the priority. Finally the trustee posits that in any event a wage claim is limited to $2,000.00 for priority treatment.

Section 507(a)(3) allows a third priority in payment to unsecured claims for wages, salaries or commissions, including vacation, severance and sick leave pay, earned by an individual within ninety days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, but only to the extent of $2,000.00 for each such individual. It expands and increases the wage priority provided under § 64a(2) of the Act by raising the amount entitled to priority from $600.00 to $2,000.00 and modifying the three month limit to run from the earlier of the date of the filing of the petition or the date of cessation of the debtor's business.

Further, it was expanded to cover vacation, severance and sick leave pay but other incidences of employment, such as "moving expenses," were not expressed by Congress to be included in the priority. The term "wages" had received a very liberal construction under the Act and the courts in general had construed the term to include vacation, severance and sick leave pay ... those items added by Congress in § 507(a)(3) of the Code. However, the cases clearly reflected that employee compensation other than wages was not entitled to priority. *See Board of Electrical Industry v. United States*, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968) and *United States v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1958). In none of those cases have the courts construed moving expenses as being within the priority afforded wage claims under § 507(a)(3).

■ It is not altogether clear that the broad and liberal construction given wage claims under the Act is carried forward to wage claims under the Code. The expansion of the priority to include vacation, severance and sick leave pay accomplished the intent of those pre-Code cases where liberal construction was given. Without reaching that issue it is clear that the moving expenses are not "wages, salaries or commissions *earned* by an individual within ninety days before the date of cessation of business."

■ Thus I have concluded that the trustee's first challenge to the proof of claim must be sustained and there is no need to address the contention that the moving expenses were not "earned" within ninety days before the date of the filing of the petition or the date of cessation of business. However, the trustee would prevail on that challenge as well. The move was accomplished on August 3, 1981, and the invoice was dated August 26, 1981. Cessation of business occurred on December 8, 1981, a date more than ninety days following the date of the invoice. Keim argues, however, that he did not discover that the claim had not been paid until November

1981, a date well within the ninety limitation. However, the date to be used for calculation of the ninety day period is the date the "wages" were "earned", not the date of the discovery. *See In re Pittston Stevedoring Corporation,* 40 B.R. 424 (Bkrtcy.S.D.N.Y.1984).

It is, therefore, ORDERED by the Court that the trustee's challenge to priority status for the claim of Don Lee Keim be, and it is hereby, sustained.

It is further ORDERED by the Court that the claim of Don Lee Keim in the amount of $3,306.38 be, and it is hereby, allowed as an unsecured claim, to share prorata in any distribution to general unsecured creditors.

All relief not granted is denied.