## In re GREAT NORTHEASTERN LUMBER & MILLWORK CORPORATION, Debtor.

### Bankruptcy No. 82–01965G.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 5, 1986.

See also, Bkrtcy., 20 B.R. 610.

Edward J. DiDonato, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for debtor/objector, Great Northeastern Lumber and Millwork Corp.

Kent Cprek, Sagot & Jennings, Philadelphia, Pa., for creditor, Teamsters Pension Trust Fund of Philadelphia and Vicinity.

Leo F. Doyle, Philadelphia, Pa., trustee.

John A. Wetzel, Philadelphia, Pa., for the trustee, Leo F. Doyle.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The question for decision is whether the debtor's withdrawal liability under the Em-

ployee Retirement Income Security Act of 1974 ("ERISA")[1] and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA")[2] is an administrative claim under 11 U.S.C. §§ 503(b)(1) or 507(a)(1) of the Bankruptcy Code ("the Code"). For the reason expressed below, we conclude that the withdrawal liability does not constitute an administrative claim.

The facts of this case are as follows:[3] The debtor and its employees were participating in a multiemployer pension plan administered by the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("the Teamsters Fund") when the debtor filed its petition for reorganization under chapter 11 of the Code. After the filing of the petition the debtor withdrew from the pension plan thus giving rise to the debtor's withdrawal liability under the plan. The Teamsters Fund filed a proof of claim based on the withdrawal liability, asserting that the claim was entitled to priority status over general, unsecured creditors. The debtor filed the instant objection to the proof of claim contending that the claim was not entitled to an administrative priority.

"Withdrawal liability" is a term used to describe an employer's obligation—upon its withdrawal from a multiemployer pension and employee benefit plan which required the employer to make periodic payments toward employees' insurance and pensions—to make a lump sum payment of additional money to the fund. This payment is required to satisfy the employer's pro rata share of the vested but unfunded benefits to be paid to employees participating in the plan, including those employed by others. *Trustee of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 99 (2d Cir.1986). The obligation was created by Congress after it found that:

(A) withdrawals of contributing employers from a multiemployer pension plan frequently results in substantially increased funding obligations for employers who continue to contribute to the plan, adversely affecting the plan, its participants and beneficiaries, and labor-management relations, and

(B) in a declining industry, the incidence of employer withdrawals is higher and the adverse effects described in subparagraph (A) are exacerbated.

MPPAA § 3(a)(4); 29 U.S.C. § 1001a(a)(4). Congress was concerned that, unless a withdrawing employer assumed such a liability, the remaining employer participants would be unable to shoulder the increased burden caused by the withdrawal, which might lead to the collapse of the entire multiemployer plan. The withdrawal payment is not made by the withdrawing employer to its own employees, but to the Fund, in order to help defray the total unfunded, vested liability of the pension plan to which the employer had been contributing. *McFarlin's*, 789 F.2d at 100. On withdrawing from a multiemployer pension fund, the employer is liable to the fund for withdrawal liability in an amount determined under 29 U.S.C. § 1391.

■ Under 11 U.S.C. § 507(a), the Code defines those expenses and claims against a debtor that are entitled to priority. Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed. *Joint Industry Board v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968); *In re United Merchants & Manufacturers, Inc.* 597 F.2d 348, 349 (2d Cir.1979); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir.1976). If one claimant is to be preferred over others, the purpose should be clear from

---

**1.** Employee Retirement Income Security Act, Pub.L. 93–406, 88 Stat. 832, Sept. 2, 1974, predominantly codified at 29 U.S.C. §§ 1001 through 1461.

**2.** Multiemployer Pension Amendments Act of 1980, Pub.L. 96–364, 94 Stat. 1208, Sept. 26,

1980, predominantly codified at 29 U.S.C. §§ 1001 through 1461.

**3.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

the statute. *Nathanson v. N.L.R.B.*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952).

Section 507 of the Code gives first priority to administrative expenses allowed under 11 U.S.C. § 503(b). Under 11 U.S.C. § 503(b)(1), the Code defines administrative expenses as including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." § 503(b)(1).

Congress granted priority to administrative expenses in order to facilitate the liquidation or reorganization of the estate for the benefit of all the estate's creditors. *McFarlin's*, 789 F.2d at 101. Congress reasoned that, unless the debts incurred by the *estate* could be given priority over the debts which forced the *debtor* into bankruptcy, creditors would not deal with the estate for fear of not being paid for their services. *McFarlin's*, 789 F.2d at 101. In chapter 7 liquidation cases, the striking metaphor is that the undertaker is paid before the surgeon.

■ Under this rubric, a claim is given administrative status if it arises out of a transaction between a creditor and the bankruptcy estate and "only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Id.* A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate. *Id.*

■ On the passage of the MPPAA, Congress mandated that, if "an employer withdraws from a multiemployer plan in a complete or partial withdrawal," it incurs a "withdrawal liability" to the plan. 29 U.S.C. § 1381(a). This liability is designed to insure that before leaving a plan an employer would pay its "proportionate" share of the plan's liability for vested but unfunded benefits attributable to work already performed. *McFarlin's*, 789 F.2d at 103. That liability usually accumulates over a period of years prior to the departure of the withdrawing employer. *Id.* Thus, the consideration supporting the withdrawal liability is, therefore, the same as that supporting the pensions themselves, the *past* labor of the employees covered by the plan. *Id.* at 101–102. As such, the liability is not accorded administrative priority. *Id.* at 103–104. To the extent that the withdrawal liability is attributable to postpetition employment, the claim would be entitled to administrative status. 11 U.S.C. § 503(b)(1)(A); *In re Cott, Corp.*, 47 B.R. 487 (Bankr.D.Conn. 1984).

As stated recently by the United States Court of Appeals for the Second Circuit, "the foregoing view finds support in decisions uniformly rejecting the argument that withdrawal liability is entitled to priority as an administrative expense incurred by the trustee in bankruptcy or debtor in possession in order to operate or preserve the business." *Trustees of the Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 104 (2d Cir.1986); *Amalgamated Ins. Fund v. Kessler*, 55 B.R. 735 (S.D.N.Y. 1985) (district court); *In re Pulaski Highway Express, Inc.*, 57 B.R. 502 (Bankr.M.D. Tenn.1986); *In re United Department Stores, Inc.*, 49 B.R. 462 (Bankr.S.D.N.Y. 1985) (partial priority allowed under 11 U.S.C. § 507(a)(4)); *In re Granada Wines*, 26 B.R. 131 (Bankr.D.Mass.1983), *aff'd*, 748 F.2d 42 (1st Cir.1984); *In re Concrete Pipe Machinery Co.*, 28 B.R. 837 (Bankr.N. D.Iowa 1983); *In re Cott*, 47 B.R. 487 (Bankr.D.Conn.1984); *In re Columbia Packing Co.*, 47 B.R. 126 (Bankr.D.Mass. 1985).

■ As applied to the case before us, we must apply the general rule that the withdrawal liability is not an administrative claim under § 503(b)(1)(A) unless it is attributable to wages earned after the filing of the petition. The Teamsters Fund has introduced no evidence to the contrary. We will, accordingly, enter an order sustaining the debtor's objection to the administrative status of the proof of claim.