**In re Roger W. HARLOFF d/b/a Roger Harloff Farms, Debtor.**

**In re Roger W. Harloff Packing, Inc., Debtor.**

**In re Classie Tomato, Inc., Debtor.**

**In re Classie Sales, Inc., Debtor.**

**In re Classie Plants, Inc., Debtor.**

Nos. 98–5120–8P1, 98–5121–8P1, 98–5122–8P1, 98–5123–8P1, 98–5124–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 29, 2000.

Robert A. Soriano, Tampa, FL, for debtor.

Mark J. Bernet, Tampa, FL, for Textron.

John A. Anthony, Tampa, FL, for Disbursing Agent Larry S. Hyman.

Andre Perron, Bradenton, FL, for Creditors' Committee.

## ORDER ON DISBURSING AGENT'S VERIFIED MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO TEXTRON ADMINISTRATIVE APPLICATION (DOC. NO. 967)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in this confirmed Chapter 11 Reorganization case is a Verified Motion for Summary Judgment With Respect to Textron Administrative Application, filed by Larry S. Hyman, the duly appointed Disbursing Agent (Disbursing Agent) acting pursuant to the confirmed Plan of Reorganization (Plan). The Motion is filed in a contested matter which involves the following: Application of Textron Financial Corporation for Allowance of "Super Priority" Administrative Expense (the Application) (Doc. No. 576); the Amended Application of Textron Financial Corporation for Allowance of "Super Priority" Administrative Expense (the Amended Application) (Doc. No. 690); and Disbursing Agent's Joinder to Objection of Debtors and Creditors' Committee to Administrative Expense Application of Textron Financial Corporation.

It is the contention of the Disbursing Agent that based on the record of this case there are no genuine issues of material fact and he is entitled to a judgment as a matter of law sustaining the Objection, disallowing the claim of Textron Financial Corporation (Textron), and disapproving Textron's Application for "Super Priority" Administrative Expense, including the Amended Application. The facts relevant to the resolution of the matter under consideration, as they appear from the record, are indeed without dispute and can be summarized as follows:

On March 31, 1998, Roger W. Harloff (Harloff) d/b/a/ Roger Harloff Farms, Roger Harloff Packing, Inc., Classie Tomato, Inc., Classie Sales, Inc., and Classie Plants, Inc. (collectively referred to as "Debtors") filed their respective Petitions for Relief under Chapter 11 of the Code. The cases were administratively consolidated and all Debtors were authorized as remain as Debtor–in–Possession and to continue to operate their respective businesses.

Textron is an institutional lender and financed the farming operations of the Debtors on asset based loans and had a valid security interest on numerous various and sundry farming equipment. The specific equipment is listed on the Scheduled attached to Textron's Proof of Claim No. 120, in addition to "all equipment now owned or hereafter acquired and all proceeds thereof, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, contract rights and general intangibles from or connected with said equipment." Some of the Debtors who used Textron's collateral prior to the commencement of these cases continued to retain and used Textron's collateral as Debtors–in–Possession.

On May 20, 1998, Harloff filed a Stipulation and Order for Terms for Adequate Protection for Textron Financial Corporation Pursuant to 11 U.S.C. § 361 (Doc. No. 100). On June 11, 1998, the Debtors filed their Motion to Approve Stipulation between Debtors and Textron Financial Corporation Relating to Adequate Protection Payment (Doc. No. 123), seeking approval of the Joint Stipulation. On July 13, 1998, this Court entered an Order and approved the Motion. Textron was to receive ade-

quate protections payments in accordance with the Stipulation as follows:

As adequate protection to Textron, in accordance with 11 U.S.C. § 361(1), in respect of Textron's liens securing the Textron Pre–Petition Debt, the Debtors are authorized and directed to make (i) monthly payments of $20,000 in cash to Textron, on or before the first (1st) day of each month, commencing on the later of (a) one (1) day after the entry of this Stipulation and Order (which order shall not be stayed, amended, modified, reversed or vacated) of (b) one (1) day after the entry of the Final Order (as defined in the Term Sheet) (which order shall not be stayed, amended, modified, reversed or vacated) and continuing each month until the Maturity Date (as defined in the Term Sheet), (ii) a single payment of $50,000 in cash to Textron on or before August 1, 1998 and (iii) a single payment of $50,000 in cash to Textron on or before January 15, 1999, all to be applied against interest (collectively, the "Adequate Protection Payments"); provided ...

On March 3, 1999, The Debtors filed a Motion (Doc. No. 451) and sought authority to resume adequate protection payments to certain secured creditors, including Textron. On April 6, 1995, this Court approved the Motion (Doc. No. 471) and the Order provided adequate protection payments as follows:

The Debtors be, and they hereby are, authorized and directed, commencing as of March 1999 and continuing through July 15, 1999 to make monthly adequate protection payments to the Secured Creditors on or before the 15th day of each month following the date of this Order (except for the March payments, which shall be due upon entry of this Order) as follows:

. . .

(f) to Textron, $20,000, plus an additional single payment of $50,000 to be made on or before July 15, 1999.

On April 2, 1999, the Creditors' Committee filed the Plan of Reorganization which was a consolidated liquidating plan. On April 14, 1999, Textron filed a Motion seeking relief from the Order which authorized the Debtors to resume adequate protection payments (Doc. No. 479). On April 23, 1999, the Creditors' Committee filed its Disclosure Statement. On April 26, 1999, Textron filed a Motion for Entry of Order Finding Debtors in Contempt of Court (Doc. No. 492). On May 19, 1999, this Court denied Textron's Motion for Contempt. On June 1, 1999, the Debtors and the Creditors' Committee filed their Joint Disclosure Statement and an Amended Plan of Reorganization (Joint Plan).

On June 18, 1999, Textron filed its initial Application for allowance of super priority administrative expense. On July 2, 1999, John Deere & Company filed an Objection to Textron's Application, and on July 13, 1999, the Debtors and the Creditors' Committee filed their joint Objection to Textron's Application.

On June 17, 1999, this Court entered an Order and conditionally approved the Amended Disclosure Statement; fixed the bar date for casting ballots on the Joint Plan; and scheduled the confirmation hearing for July 3, 1999. On August 3, 1999, this Court confirmed the Joint Plan as modified.

It is the contention of the Disbursing Agent that, based on the relevant part of the record, there are no genuine issues of fact and he is entitled to a ruling as a matter of law that neither Textron's claim nor its Amended Application for Super Priority Administrative Expense should be allowed. In support of this proposition the Disbursing Agent relies on the Order of Confirmation of the Joint Plan which, according to the Disbursing Agent, operates as a complete bar of any and all claims of Textron. The particular provisions of the Joint Plan relied on by the Disbursing Agent provides:

Pursuant to Article I, section 1.02, the Textron Claim is defined as follows:

The RH Class 9 Claim and the RHP Class 5 Claim of Textron against each of Roger Harloff and Harloff Packing, as joint and several obligors, under the Textron Loan documents, which Claim is (I) in the aggregate amount, as of the Petition Date, of $1,303,880.65 and (ii) secured, as of the Petition Date, by a lien against certain rolling stock.

Likewise, the Textron Guaranty Claims are defined as follows:

The CP Class 3 Claim, the CT Class 3 Claim and the CS Class 2 Claim of Textron, which Claims are for the contingent performance by each of Classie Plants, Classie Tomato and Classie Sales of Roger Harloff's and Harloff Packing's joint several obligations to Textron under the Textron Loan documents pursuant to three (3) certain Guarantees, each dated March 30, 1994.

Pursuant to the Confirmed Plan, Textron was afforded full satisfaction of its claim, as specifically referenced in Section 3.04 of the confirmed Plan, which provides:

(h) Allowed Textron Claim and Textron Guaranty Claim. In full satisfaction, settlement, relief and discharge of the Allowed Textron Claim and the Textron Guaranty Claim, Textron shall receive its Collateral on or before the effective date.

The Disbursing Agent contends that the provisions of the confirmed Joint Plan relating to the Textron claim preclude the recovery by Textron of any recovery of the kind sought in Textron's Application. Textron's failure to object to these terms operated as a waiver of and is *res judicata* as to the rights to the allowance of Claim No. 120 and the approval of Textron's Amended Application.

This record leaves no doubt that the Order confirming the Joint Plan specifically deals with the claim of Textron and clearly provides that the return of the equipment shall be deemed to be a full and complete satisfaction of all claims of Textron.

Section 1141(a) of the Bankruptcy Code provides in pertinent part:

the provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not such creditor ... has accepted the plan.

The law is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised pertaining to such plan are *res judicata.* In the context of bankruptcy proceedings, these elements have been applied to preclude collateral attacks on orders confirming a plan of reorganization. *See Israel Discount Bank Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir.1992); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990), cert. denied 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *In re Howe,* 913 F.2d 1138, 1144 (5th Cir.1990) *(res judicata* bars claims that could have been advanced not merely those advanced); *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1124–25 (5th Cir.1987) (a party may not avoid the preclusive effects of *res judicata* by asserting a new theory or different remedy; nucleus of facts defines the claim rather than the legal theory posed or recovery sought); *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 560, n. 4 (5th Cir. 1983) (en banc) (even under the transactional test, the same action for *res judicata* purposes includes all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction).

In *Justice Oaks,* the Eleventh Circuit Court of Appeals, in holding for the debtor, quoted the United States Supreme Court, stating

the judgment ... is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter that was actually offered and received to sustain the demand, but also as to every claim which might have been presented.

*Justice Oaks, supra,* at 1552, *quoting Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).

Similar to the holding in *Justice Oaks,* this Court recently held that the *res judicata* effects of a confirmed plan applied to secured creditors of a debtor. *See In re Harbour Oaks Development Corp.,* 228 B.R. 801 (Bankr.M.D.Fla.1999). In *Harbour Oaks,* the debtor, as well as several other individuals executed a note and mortgage in favor of Community Bank. Harbour Oaks filed for Chapter 11 bankruptcy protection. Community Bank filed its proof of claim. The plan of reorganization provided for treatment of Community Bank as follows: "the real property ... shall be transferred to Community Bank ... *in full and complete satisfaction of its lien." Harbour Oaks* at 803 (emphasis supplied.) Community Bank did not object to the treatment as proposed in the plan. Prior to the confirmation of the plan, Community Bank received final relief from stay to pursue its *in rem* rights against Harbour Oaks.

Applying the foregoing principles to the case at hand, it is clear that this Court must deny Textron's Amended Application. Textron never objected to the confirmation of the Confirmed Plan, never sought rehearing with respect to the Confirmation Order, and accordingly was agreeable to the foregoing terms governing its recovery in these reorganizations. The provisions of the Confirmed Plan, similar to the plan provisions in *Harbour Oaks,* relating to the Textron Claim, preclude the recovery by Textron of any recovery of the kind sought in Textron's Amended Application. Moreover, Textron cannot rely upon Section 507(b) as a Bankruptcy Code provision that will trump the policy argument behind the enactment of Section 1141 of the Bankruptcy Code. Textron's failure to object to the treatment as defined in the confirmed Joint Plan operates as *res judicata* of its right therein.

Based on the foregoing, this Court is satisfied that the Objection to Claim should be overruled and Claim No. 120 should be allowed as a secured claim, provided that Textron shall not be entitled to any distribution of its secured claim by virtue of the binding effect of the Order of Confirmation. Also, Textron should not be entitled to recover anything from the estate for its alleged deficiency claim, i.e., the shortfall resulting from liquidation of the collateral. This leaves for consideration Textron's Amended Application.

On August 5, 1999, after the confirmation hearing and after the entry of the Order Confirming the Joint Plan, Textron filed the Amended Application for Allowance of Super Priority Administrative Expense in the amount of $581,226 based on the following computation:

| | |
|---|---|
| Principal | $1,166,172 |
| Interest through 6/23/99 | 14,547 |
| Late Fees (prepetition) | 8,507 |
| Repossession and Sale Costs: | |
| Repossession Charge | 87,000 |
| Storage | 7,000 |
| Sales Commissions | 48,000 |
| Legal Fees (estimated) | 50,000 |
| Subtotal: | $1,381,226 |
| Sale Proceeds | (800,000) |
| TOTAL: | $ 581,226 |

In addition, the Amended Application sought an accrual of interest at $373.37 per day.

It should be apparent even from a cursory review of the Amended Application that it cannot be allowed as a super priority administrative claim as filed, even assuming that the claim is not barred by the Order of Confirmation of the Joint Plan for the following reasons. The Amended Application is filed pursuant to Section 507(b) of the Bankruptcy Code. The clear and unmistakable language of the Section leaves no doubt that before an application for super priority will be approved, the creditor must satisfy the following requirements:

First, adequate protection must have been provided previously, and the protection ultimately must prove to be inadequate. Second, the creditor must have a claim allowable under § 507(a)(1) (which in turn requires that the creditor

have an administrative expense claim under § 503(b)). And third, the claim must have arisen from either the automatic stay under § 362; or the use, sale or lease of the collateral under § 363; or the granting of a lien under § 364(d) *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir.1994). Before considering whether Textron meets these requirements, it should be noted that the general policy of the American bankruptcy jurisprudence always has been the principle that the limited resources of a debtor should be equally distributed among the debtor's creditors. Thus, the priority provisions of the Code should be narrowly construed because they are contrary to the general policy that equality is equity. *In re James B. Downing & Co.*, 94 B.R. 515, 519 (Bankr.N.D.Ill.1988), citing *Joint Industry Bd. of Elec. Industry v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 20 L.Ed.2d 546, (1968).

It is evident from the language of Section 507(b) that before the claim could be granted super priority it must be a claim allowable under Section 507(a)(1) of the Code. This section grants first priority to claims which qualify as cost of administration under Section 503. This section accords an administrative claim status for the actual and necessary costs and expenses of preserving the estate. Section 503(b)(1)(A).

█ It is recognized that the modifiers "actual and necessary" must be carefully scrutinized. 3 L. King, *Collier on Bankruptcy* ¶ 503.–04[1][a][I] at 503–24 (15th ed.1991); *In re Mid Region Petroleum, Inc.*, 1 F.3d 1130, 1132 (10th Cir.1993), quoting *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891, 897 (Bankr. E.D.Pa.1987). As noted in *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988), "The court's administrative expense inquiry centers upon whether the estate has received an *actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of its property.*" *Broadcast Corp. of Georgia v.*

*Broadfoot*, 54 B.R. 606, 611 (N.D.Ga.1985) ("administrative expense scheme does not focus in the first instance on whether a creditor sustained a loss during this period, but on whether the estate has received an actual benefit"), *aff'd in part, reversed in part, In re Subscription Television of Greater Atlanta*, 789 F.2d 1530, 1532 (11th Cir.1986).

Thus, unless Textron can satisfy this requirement of Section 507(b), its Amended Application for super priority administrative expense cannot be granted. One would be hard pressed, indeed, to put forth a persuasive argument that the principal, interest, late fees, repossession costs and legal fees incurred by Textron qualify as actual and necessary expenses of the preservation of the estate.

█ It is clear that in the last analysis, Textron's claim is nothing more and nothing less than a plain deficiency claim of a secured creditor who, after recovering the collateral, liquidated the collateral and came out short because the proceeds of the liquidation was insufficient to fully satisfy the claim of the secured creditor. Deficiency claims of a secured creditor are just general unsecured claims unless the secured party is able to establish that the shortfall which is the decrease of the value of the collateral is attributable to the continued use of the collateral by the debtor. The shortfall is not due to the miscellaneous costs the secured party claimed to have incurred by the secured party in connection with the repossession and liquidation of the collateral.

In sum, even assuming without conceding that Textron is not barred by the Order of Confirmation, and while its pre-petition claim is barred, its application for super priority administrative expense is equally not allowable as a matter of law.

Based on the foregoing, this Court is satisfied that based on the finding that there are no genuine issues of material fact the Disbursing Agent is entitled to an Order disallowing the claim and denying

Textron's Amended Application for Super Priority Administrative Expense.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Verified Motion for Summary Judgment filed by the Disbursing Agent be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Objection of the Disbursing Agent to Claim No. 120 filed by Textron be, and the same is hereby, sustained and Claim No. 120 is hereby disallowed. It is further

ORDERED, ADJUDGED AND DECREED that the Amended Application of Textron for Allowance of "Super Priority" Administrative Expense be, and the same is hereby, disapproved.