In re INTEGRATED HEALTH
SERVICES, INC., et al.,
Debtors.

Nos. 00–389(MFW) to 00–825(MFW).

United States Bankruptcy Court,
D. Delaware.

Feb. 24, 2003.

Robert S. Brady, Edmon L. Morton, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Michael J. Crames, Arthur Steinberg, Marc D. Rosenberg, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, Counsel for Debtors.

Joanne B. Wills, Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, DE, Glenn Rice, William Silverman, Otterbourg, Steindler, Houston & Rosen, PC, New York City, Counsel for the Official Committee of Unsecured Creditors.

Christopher S. Sontchi, Ricardo Palacio, Ashby & Geddes, Wilmington, DE, Eric G. Waxman, III, Daniel M. Kolko, Phillips Nizer, LLP, Garden City, NY, Counsel for The Travelers Indemnity Company and its Affiliates.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtors' objection to the claim of the Travelers Indemnity Company & Affiliates ("Travelers").

The Debtors objected to the classification of Travelers' claim as a priority claim under section 507(a)(4) of the Bankruptcy Code as "contributions to an employee benefit plan." 11 U.S.C. § 507(a)(4). At the omnibus hearing on January 29, 2003, we overruled the objection. This Memorandum Opinion explains our reasoning in allowing the claim as a priority claim.

### I. FACTUAL BACKGROUND

Integrated Health Services, Inc. ("IHS") and its related entities (collectively "the Debtors") provide post-acute and specialty healthcare services. At the time they filed their petitions under chapter 11, they had 1,300 locations throughout the United States. Pre-petition IHS had entered into a series of agreements with Travelers Indemnity Company and certain affiliates ("Travelers") to provide the Debtors with workers' compensation insurance coverage ("the Agreements").

Travelers filed a claim for $3,919,891 representing insurance premiums due for workers' compensation coverage ("the Claim"). Travelers filed the Claim as a priority claim under section 507(a)(4) of the Bankruptcy Code asserting it represents "contributions to an employee benefit plan." The Debtors objected to the status of the Claim, asserting it should be classified as a general unsecured claim.[2]

### II. JURISDICTION

This Court has jurisdiction over this matter as a core proceeding pursuant to 28

---

1. This Opinion Constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. The Debtors' objection also asserts that the claim amount should be reduced to $3,033,255, the amount reflected in the Debtors' books and records. The determination of the claim amount has been deferred to a later date. The Debtors admit that, if the Claim is a priority claim, the entire amount of the Claim (as ultimately determined) fits within the statutory cap under section 507(a)(4).

The Debtors also objected to Travelers' claim being allowed against all the Debtors since the Agreements were only with IHS. That portion of the objection appears to have been unopposed by Travelers.

U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (B) and (O).

### III. *DISCUSSION*

 There is a split among the Circuits regarding whether workers' compensation insurance premiums constitute "contributions to an employee benefit plan" under section 507(a)(4). *Compare Employers Ins. of Wausau v. Plaid Pantries, Inc.,* 10 F.3d 605, 607 (9th Cir.1993)(after declining to impose a requirement that section 507(a)(4) benefits be "wage substitutes," the court saw "no reason for concluding that Congress intended to deny priority to workers' compensation benefit plans while granting the same statutory priority to other plans providing benefits to employees") *with Travelers Prop. and Cas. Corp. v. Birmingham–Nashville Express, Inc.,* 224 F.3d 511 (6th Cir.2000)(relying on legislative history, the court found that workers' compensation insurance premiums were not "wage substitutes" and therefore did not fit the section 507(a)(4) priority); *State Ins. Fund v. S. Star Foods, Inc.,* 144 F.3d 712 (10th Cir.1998)(same); *Employers Ins. of Wausau v. Ramette (In re HLM Corp.),* 62 F.3d 224 (8th Cir. 1995)(same).

### A. *Plain Meaning*

 The plain meaning of a statute is conclusive except in the rare cases when the literal application of a statute produces a result "demonstrably at odds with the intentions of the drafters." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation omitted). The Supreme Court has reiterated this strict constructionist approach. *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 7, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)(the Court began its analysis "with the understanding that Congress 'says in a statute what it means and means in a statute what it says

there' ")(*quoting Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

Section 507(a)(4) is a simple provision that grants priority to "allowed unsecured claims for contributions to an employee benefit plan." 11 U.S.C. § 507(a)(4). Without a definition of "contributions to an employee benefit plan," the Bankruptcy Code relies on courts to apply the provision according to the plain meaning of its terms. *Hartford Underwriters,* 530 U.S. at 7, 120 S.Ct. 1942 ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms") (internal quotation marks and citation omitted)(*quoting Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026).

We find that referring to the legislative history is not warranted in this case. Workers' compensation benefits are classic benefits that inure to employees. When an employee is injured on the job, workers' compensation covers health care costs, death benefits, and lost wages. Thus, the underlying payments to injured employees from workers' compensation fit the archetypical examples of employee benefit plans such as health insurance, disability, and pension plans. The Debtors' choice to contract with Travelers for insurance to cover such employee benefits was the implementation of a "plan." Accordingly, we find that the premiums due under the Agreements are "contributions to an employee benefit plan." As such, the Claim enjoys priority under section 507(a)(4).

### B. *Legislative History*

Even if the statute were ambiguous and necessitated an inquiry into legislative history, we conclude that the legislative history fails to reveal a logical basis for excluding workers' compensation insurance premiums from section 507(a)(4).

Section 507(a)(4) was added in response to the decision in *United States v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959). In that case, the Supreme Court held that the priority for wages in section 507(a)(3) did not include all "employee benefits." After referencing labor contract negotiations, the House and Senate Reports state simply that the "priority granted [by section 507(a)(4)] is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others." H.R. Conf. Rep. No. 95–595, at 357–58 (1977), U.S.Code Cong. & Admin.News 1978, at 5963, 6312–13; S. Conf. Rep. No. 95–989, at 67–73 (1978), U.S.Code Cong. & Admin.News 1978, at 5787, 5853–59. The Debtors' argument is premised on the decisions of the Eighth, Tenth and Sixth Circuits which seized upon the reference to labor contract negotiations to create a narrow definition of "employee benefit plans" to encompass only "wage substitutes" which are the result of labor contract negotiations. *See Birmingham–Nashville Express*, 224 F.3d 511; *Southern Star Foods*, 144 F.3d 712; *HLM*, 62 F.3d 224.

But such an interpretation goes beyond the legislative history and effectively creates an exception to section 507(a)(4). *See, e.g., United States v. Noland*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); *Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)(creating exceptions to statutes from legislative history is disfavored). The legislative history does not directly state that workers' compensation is not included in section 507(a)(4). Nor does it even state that covered employee benefits must be "wage substitutes" or arise from labor contract negotiations. Thus, there is no clearly expressed legislative intent to exclude workers' compensation benefits from the plain language of section 507(a)(4). *See Aaron v. SEC*, 446

U.S. 680, 699, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) ("the legislative history, albeit ambiguous, may be read in a manner entirely consistent with the plain meaning of [the statute]. In the absence of a conflict between reasonably plain meaning and legislative history, the words of the statute must prevail"). Accordingly we decline to create such an exception from the legislative history. As a result, the "wage substitute" distinction is not persuasive even when considering the legislative history of section 507(a)(4).

■ The Debtors also argue that to fit section 507(a)(4), the employee benefits must be the result of bargaining between the Debtor and the employee. This argument is premised on the reference to labor contract negotiations in the Reports. However, that reference is given by way of example, not as the exclusive type of employee benefit for which priority is conferred. Just as we decline to read a wage substitute requirement into section 507(a)(4), we do not graft the distinction of bargained for (versus statutorily mandated) benefits onto "employee benefit plans." *See Birmingham–Nashville Express*, 224 F.3d at 516 ("An employer's statutorily mandated payment to an employee benefit fund, for example, is no less of a 'contribution' to such a fund simply because it is mandated by statute, agency regulations, an employee contract, or a collective bargaining agreement").

## IV. *CONCLUSION*

For the foregoing reasons, we conclude that the Travelers' Claim based upon workers' compensation insurance premiums is a contribution to an employee benefit plan and is therefore entitled to priority status under section 507(a)(4).