**In re Charles M. IVEY, III, Trustee, Plaintiff–Appellant,**

v.

**GREAT WEST LIFE & ANNUITY INSURANCE CO., Defendant–Appellee.**

No. 1:02CV586.

United States District Court, M.D. North Carolina.

March 31, 2004.

John Marshall Blust, Ivey, McClellan, Gatton & Talcott, L.L.P., Greensboro, NC, for Debtor J.G. Furniture Group, Inc. and Appellant Charles M. Ivey, III, Trustee for Debtor.

David M. Warren, Poyner & Spruill, L.L.P., Rocky Mount, NC, for Appellee Great West Life & Annuity Life Insurance Company.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This matter is before the Court on appeal from the United States Bankruptcy Court for the Middle District of North Carolina. Charles M. Ivey, Trustee for the bankruptcy estate of J.G. Furniture Group, Inc., appeals the final decision of the Bankruptcy Court allowing the claim of Great West Life & Annuity Insurance Company. For the reasons set forth below, Great West's priority claim should be allowed and the decision of the Bankruptcy Court will be AFFIRMED.

### I.

The undisputed facts are as follows: J.G. Furniture Group, Inc. ("the Debtor") operated a factory in Pennsylvania until July of 1997. On April 28, 1996, the Debtor entered into a self-funded Services Contract with Great West Life & Annuity Insurance Company ("Great West") to administer an employee medical benefits plan. Under the terms of the contract, the Debtor's employees submitted their medi-

cal bills to Great West for payment and Great West evaluated and paid the claims on behalf of the plan. The Debtor reimbursed claims payments made by Great West by permitting Great West to withdraw money from a special bank account set up by the Debtor. In exchange for these services, the Debtor paid Great West administrative fees.

In order to limit its potential claims liability, the Debtor also elected to purchase "stop-loss" coverage from Great West. In essence, this coverage limited the maximum claims liability that the Debtor could incur from the self-funded benefits plan. Great West could only be reimbursed for claims paid up to the Debtor's maximum liability amount. The Debtor calculated and submitted its own estimated premiums for this coverage each month. Great West reviewed and corrected the premium estimates as needed and the Debtor either received a credit for overpayment or was responsible for paying any deficiency.

In July of 1997, the Debtor closed its factory in Pennsylvania and moved all production activities to High Point, North Carolina. Accordingly, most of the Pennsylvania factory employees were left without employment as of the first week of August, 1997. Although no longer working for the Debtor, the former Pennsylvania employees were invited to continue to participate in the Debtor's medical benefit plan. Many of the former employees completed COBRA forms and sent payments to the Debtor in order to continue coverage under the plan.

On or about March 3, 1998, the Debtor stopped making its contractually obligated premium payments to Great West. As a result, Great West discontinued payments on the former employees' medical claims after April 2, 1998. On April 7, 1998, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Charles M. Ivey was appointed as Trustee.

On July 2, 1998, Great West filed a claim in the bankruptcy proceeding in the amount of $27,773.51.[1] The costs cover the period from February 17, 1998 through April 2, 1998 and reflect a combination of unpaid administrative fees, unpaid premiums, and medical claims which were paid on behalf of the Debtor's former employees but not reimbursed.

Great West brought its claim as a priority claim for contributions to an employee benefit plan under 11 U.S.C. § 507(a)(4). The Trustee filed an objection to the claim, arguing that Great West is not entitled to assert priority under § 507(a)(4). The Bankruptcy Court held that Great West did have a priority claim for contributions, citing this Court's decision in *Aetna Life Ins. Co. v. The Montaldo Corp.*, 232 B.R. 853 (M.D.N.C.1997). The Trustee filed notice of appeal. Oral arguments in this matter were held on January 30, 2003.

## II.

Bankruptcy law details various expenses and claims which should be given priority in settling bankruptcy estates. *See* 11 U.S.C. § 507. The priority statute sets out these claims in order of decreasing priority. The parties to this dispute disagree over the application of the fourth priority, priority for contributions to an employee benefit plan. The provision in dispute is as follows:

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of

1. Proof of Claim No. 245.

the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,650 [2]; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection,[3] plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(4).

The Trustee bases his argument that Great West is not entitled to priority under § 507(a)(4) on two grounds: (1) that an insurance company is not among the persons entitled to priority under the statute, and (2) that the priority does not apply where the Debtor's former employees did not work for the Debtor within the 180–day period prior to the filing of the bankruptcy petition. A determination of these issues requires a close examination of § 507(a)(4).

### A.

■ Statutory interpretation must, of necessity, begin with the language of the statute itself. If the statutory language is unambiguous and "the statutory scheme is coherent and consistent," the Court need not look further for evidence of Congressional intent. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir.2004) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). When examining statutory language, words should be given their ordinary, contemporary, and common meaning.[4] *Scott v. U.S.*, 328 F.3d 132, 139 (4th Cir.2003). All words in a statute should be given effect and none should be disregarded as mere surplusage. *Id.*

■ Whether language is ambiguous is determined not only by reference to the language itself, but by the "specific context in which that language is used, and the broader context of the statute as a whole." *Johnson*, 357 F.3d 426 (citing *Robinson*, 519 U.S. at 341, 117 S.Ct. 843). For example, the principle of *ejusdem generis* provides that a general statutory term should be understood in light of specific terms that surround it. *U.S. v. Parker*, 30 F.3d 542, 553 n. 10 (4th Cir.1994). Courts may consider the arrangement of the words in light of the rules of grammar. *Miller's Apple Valley Chevrolet Olds–Geo, Inc. v. Goodwin*, 177 F.3d 232, 234 (4th Cir.1999). A court construing a statute presumes that the statute is not self-contradictory or otherwise irrational. *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966, 975 (4th Cir.1993).

### B.

■ The Trustee's first ground for appeal stems from his contention that insurance companies are not among the entities entitled to priority under 11 U.S.C. § 507(a)(4). Courts have disagreed as to

---

**2.** This amount was recently adjusted upwards from the $4,000 cited by the parties.

**3.** Paragraph 3 of 11 U.S.C. § 507(a) addresses the priority of employees for wages earned prior to bankruptcy and will be discussed in more detail below.

**4.** There are two narrow exceptions to the rule that a statute should be given its plain meaning. *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 n. 2 (4th Cir.1999). The first exception applies when literal application of the statutory language produces an outcome that is demonstrably at odds with clearly expressed congressional intent. The second exception applies when literal application of the statutory language results in an outcome that can truly be characterized as absurd. *Id.*

what persons are entitled to priority under this statute. *See e.g., In re Saco Local Dev. Corp.,* 711 F.2d 441 (1st Cir.1983) (finding that insurers are entitled to priority); *In re Edward W. Minte Co., Inc.,* 286 B.R. 1 (Bankr.D.Col.2002) (finding that insurers are not entitled to priority). This Court has previously agreed with cases finding that insurance companies are entitled to assert priority for contributions to employee benefit plans. *Aetna Life Ins. Co. v. The Montaldo Corp.,* 232 B.R. 853 (M.D.N.C.1997). In light of the continuing legal debate over this issue, this Court will revisit its reading of the statute.

The Trustee argues that the priority given to "claims for contributions to an employee benefit plan" only applies to claims made by employees. The Trustee's support for this interpretation is, in part, that bankruptcy priority provisions are to be narrowly construed. *See Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 865 (4th Cir.1994). However, the statute does not explicitly limit priority to employee contributions. Instead, the statute gives priority to "claims for contributions" to the benefit plan "arising from services rendered within 180 days." This statutory language, at least in isolation, appears to allow priority for insurers or any other parties who make contributions to the plan.

### 1.

In order to determine whether Congress intended to allow priority for insurers, the language of the benefit plan priority must be examined both in isolation and in the context of the larger priority statute. If the plain language of the statute is unambiguous and would permit priority for insurers, this Court need not look further for evidence of Congressional intent.

The specific language of 11 U.S.C. § 507(a)(4) gives priority to claims for contributions to an employee benefit plan. The word "contribute" is defined as: (1) "to give a part to a common fund or store" or (2) "to play a significant part in bringing about an end or result." *Webster's Ninth New Collegiate Dictionary* (Merriam–Webster, Inc.1987). An insurance company that administers an employee benefit plan and pays all medical claims out of its own funds until reimbursed appears to play a significant part in that benefit plan. Accordingly, the plain language of the statute appears to include priority for an insurance company which has expended its own funds to make the plan work.

■■■ Further support for giving priority to such insurers can be found by comparing the language in § 507(a)(4) to other language in the priority statute. The priority given to employees for a portion of their wages is set out in the paragraph above the benefit plan priority. 11 U.S.C. § 507(a)(3). This priority applies to "wages, salaries, or commissions, including vacation, severance, and sick leave pay *earned by an individual."* [5] *Id.* (emphasis added). In contrast, the employee benefit plan priority applies to "contributions to an employee benefit plan ... arising from services rendered." When Congress includes language in one section of a statute, but excludes it from another section, the disparity is presumed to be intentional. *De Osorio v. I.N.S.,* 10 F.3d 1034, 1041 (4th Cir.1993). If Congress had intended the benefit plan priority to apply only to individuals or employees, it could have phrased this priority as specifically as it did the wage priority.

### 2.

The Trustee concedes that the language in § 507(a)(4) does not explicitly limit pri-

---

**5.** The priority also applies to corporations with only one employee.

ority to employees. However, he argues that the rules of statutory construction require § 507(a)(4) to be read in context, and that the statutory context demonstrates Congressional intent to limit the priority. As support for this argument, the Trustee points to the relationship between § 507(a)(4) and the employee wages priority provision in § 507(a)(3). A party may only receive priority for contributions to an employee benefit plan up to a statutory maximum. This statutory cap is defined in such a way that the amount of priority available for contributions to an employee benefit plan is explicitly dependent on the amount of priority which has been claimed by employees for unpaid wages under § 507(a)(3). In essence, if each of a Debtor's employees has asserted priority for employee wages up to the maximum amount allowed by statute, the priority for contributions to an employee benefit plan is no longer available. Because only employees may claim wage priority under § 507(a)(3), and because the amount of employee wage priority claimed affects the available amount of employee benefit plan priority, the Trustee contends that Congress intended the employee benefit plan priority to be limited to employees.

Because statutory language must be considered as a whole, and not in isolation, examination of the relationship between the employee wage priority and the employee benefit plan priority is appropriate. The fact that the employee benefit plan priority directly follows the employee wage priority, and makes specific reference to the wage priority, leads to a reasonable interpretation that the two priorities are related. In addition, language limiting the maximum amount of priority available for employee benefit plan contributions by the amount of employee wage priority claimed does create a reasonable interpretation that the benefit plan priority was intended as an additional protection for employees.

Evidence of Congressional intent to provide protection for employees, however, does not necessarily provide evidence of an intent to limit priority to individual employees. Providing priority to claims made by insurance companies in the business of providing health coverage for employees is also consistent with a Congressional intent to protect employee health benefits. An insurance company that continues to provide health benefits to employees during an employer's periods of financial difficulty is protecting employees who stay with the employer. Were insurance companies to not receive priority in bankruptcy, continued health benefits may not be available to the employees of struggling businesses. That the amount may be capped by amounts entitled to priority under § 507(a)(3) does not suggest that only employees are entitled to priority under § 507(a)(4) but that Congress determined to limit, in an objective manner, the total amount entitled to priority under § 507(a)(4).

3.

Because the plain language of the priority statute is unambiguous and does not exclude insurers, this Court need not look beyond the text of the statute to the legislative history for evidence of Congressional intent. *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir.1996). However, it is worth noting that the legislative history behind § 507(a)(4) also does not demonstrate a Congressional intent to exclude priority for insurers.

The House Report addressed the employee benefit plan priority and the employee wage priority together in a section entitled "Wages and Fringe Benefits." The report noted that the purpose behind giving priority to employees in bankruptcy is to help rehabilitate the company by

"ensur[ing] that employees will not abandon a failing business for fear of not being paid." H.R.Rep. No. 95–595 at 187 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6148. The report went on to explain that failing to recognize fringe benefits as part of an employee's bargained-for wages "does a severe disservice to those working for a failing enterprise." *Id.* The report noted that additional time was given for calculating the priority of both wages and benefit plans in order to "provide additional protection to the employees of a bankrupt enterprise." *Id.*

The Senate Report also supports a finding that Congress intended the employee benefit plan priority as a protection for employees. The report explained that the priority for employee benefit plans was created in order to overrule two Supreme Court decisions "which held that fringe benefits were not entitled to wage priority status." S.Rep. No. 95–989 at 69 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5855. Like the House Report, the Senate Report recognizes that fringe benefits may be negotiated along with wage demands and are entitled to similar priority. *Id.*

The legislative history behind 11 U.S.C. § 507(a)(4) demonstrates a clear Congressional intent to protect employees who stay with a failing company. However, there is no clear intent to limit bankruptcy claim priority to individual employees. The purpose of granting priority to employee wages and to employee benefit plan contributions was to encourage and reward employees who remain with an employer during difficult financial times at risk of losing their wages and financial benefits. Protecting insurers who continue to provide health benefits for a debtor's employees during difficult financial times protects the employees receiving these benefits. In turn, employees are more likely to stay with their struggling employer when the employer ensures that employee medical claims are paid.

After full reconsideration of 11 U.S.C. § 507(a)(4), this Court finds that insurers are among the class of persons intended to receive priority for contributions to employee benefit plans. The statute does not specifically limit its application to employees, and the language of the statute read in context does not create an ambiguity. While examination of the legislative history is unnecessary, it indicates nothing more than a Congressional intent to protect employees. Therefore, this Court reaffirms its earlier decision in *Aetna Life Ins. Co. v. The Montaldo Corp.*, 232 B.R. 853 (M.D.N.C.1997). The Bankruptcy Court's decision granting Great West's priority, in reliance on *Aetna*, will be AFFIRMED.

### C.

The Trustee argues that, even in the event this Court reads 11 U.S.C. § 507(a)(4) to include priority for insurers, Great West's claim still should be denied under the unique facts of this case. Because the Debtor's former employees did not render any services to the Debtor in the 180 days preceding the filing of the bankruptcy petition, the Trustee argues that priority can not be granted. However, because this Court finds that priority under 11 U.S.C. § 507(a)(4) is not limited to contributions related to services provided *by employees*, Great West is entitled to priority.

The Trustee bases his argument on the language of § 507(a)(4) which grants priority "for contributions to an employee benefit plan—arising from services rendered within 180 days before the date of the filing of the petition ...." Providing essentially the same contextual arguments set out in Section B, the Trustee argues that this statutory language only refers to

services rendered by employees. Because the insurance claims involved in this dispute are based on medical coverage for *former* employees, the Trustee argues that the claims are not within the priority statute.

As discussed above, issues of statutory interpretation begin with an examination of the plain language of the statute. Just as the plain language of the statute does not limit priority to individual employees, it also does not limit priority on the basis of whether an individual employee has provided services to the debtor. The failure of the statute to include language limiting priority to services provided by individual employees, in the way the statute specifically limits priority for employee wages to those "earned by an individual," is of great significance. Instead of limiting the priority to contributions for services rendered "by an individual," the statute simply permits priority for contributions arising from services rendered. Insurers providing health coverage are rendering services, and the claims for contributions arise from these services. *See e.g., In re ABC Fabrics of Tampa, Inc.*, 259 B.R. 759 (Bankr. M.D.Fla.2001); *In re Maxwell Newspapers, Inc.*, 192 B.R. 633 (Bankr.S.D.N.Y. 1996). *But see In re AER–Aerotron, Inc.*, 182 B.R. 725, 727 (Bankr.E.D.N.C.1995) (finding that claim for unpaid insurance premium did not arise from a "service").

### III.

For the reasons stated above, Great West is entitled to priority for contributions to an employee benefit plan under 11 U.S.C. § 507(a)(4). In light of the unambiguous plain language of the statute, this Court reaffirms its earlier decision in *Aetna Life Ins. Co. v. The Montaldo Corp.*, 232 B.R. 853 (M.D.N.C.1997). Accordingly, the decision of the Bankruptcy Court granting Great West's priority in reliance on *Aetna* will be AFFIRMED.

### ORDER

This matter is before the Court on appeal from the United States Bankruptcy Court for the Middle District of North Carolina. Charles M. Ivey, Trustee for the bankruptcy estate of J.G. Furniture Group, Inc., appeals the final decision of the Bankruptcy Court allowing the claim of Great West Life & Annuity Insurance Company. For the reasons set forth in a contemporaneously filed Memorandum Opinion, Great West's priority claim should be allowed and the decision of the Bankruptcy Court will be AFFIRMED.