KING, Circuit Judge,
concurring in the judgment:
In this appeal by Zurich American Insurance Company (“Zurich”), we are called upon to decide whether a claim by Zurich for unpaid workers’ compensation insurance premiums is entitled to priority status under § 507(a)(4) of the Bankruptcy Code. Zurich maintains that its claim is so entitled, asserting that such premiums constitute, under the applicable statutory provision, “contributions to an employee *230 benefit plan arising from services rendered.” 11 U.S.C. § 507(a)(4). Both the bankruptcy court and the district court disagreed with Zurich, relegating its claim to the status of a general unsecured creditor of the bankrupt Howard Delivery Service, Inc. (“Howard”). As explained below, I conclude, on this question of first impression, that Zurich’s claim is entitled to § 507(a)(4) priority status.
I.
Under West Virginia law, employers in the state are required to “subscribe to and pay premium taxes into the [state’s] workers’ compensation fund for the protection of their employees.” W. Va.Code § 23-2-1(a). In the alternative, an employer may self-insure by, among other requirements, demonstrating its financial ability to cover any workers’ compensation claims that may arise. Id. at § 28-2-9. Howard, an over-the-road freight carrier operating in West Virginia, fulfilled its obligations under West Virginia law to become “self-insured” and purchased workers’ compensation insurance coverage from Zurich (the “Policy”).[1] The Policy became effective on July 1, 1997, and remained in effect until January 22, 2002, when it was cancelled by Howard. Upon cancellation, Howard owed Zurich thousands of dollars in unpaid premiums for coverage afforded by the Policy.[2]
On January 30, 2002, Howard filed a Chapter 11 bankruptcy petition in the bankruptcy court for the Northern District of West Virginia, seeking court protection in the reorganization of its business operations. On May 9, 2002, Zurich filed an unliquidated and unsecured creditor’s claim in that proceeding, seeking priority status from the bankruptcy court for its claim for the unpaid premiums owed on the Policy.[3] On March 28, 2003, Zurich filed an amended proof of claim, specifically asserting that its claim was entitled to priority status under § 507(a)(4) of the Bankruptcy Code (the “Statute”), for contributions to an employee benefit plan in the sum of $410,215 (the “Zurich Claim”).[4] Pursuant to the Statute, a creditor of a Chapter 11 debtor is authorized to recover on a fourth-level priority basis as follows:
(a) The following expenses and claims have priority in the following order:
(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor’s business, whichever occurs first....
11 U.S.C. § 507(a)(4).[5] On June 12, 2003, Howard filed an objection to the *231 amount of the Zurich Claim, and specifically to Zurich’s assertion that the Claim was entitled to priority status.
By an opinion filed on July 15, 2008, the bankruptcy court denied the Zurich Claim priority status, concluding that unpaid workers’ compensation premiums are not “bargained-for, wage-substitute-type benefits,” relying on materials it identified in the legislative history of the Statute. In re: Howard Delivery Serv., Inc., BK No. 02-30289, at *5 (Bankr.N.D.W.Va.) (the “Bankruptcy Opinion”) (observing also that three courts of appeals had so ruled while only one had determined otherwise). Zurich appealed the Bankruptcy Opinion to the district court, which affirmed, on December 22, 2003, on similar grounds. Howard Delivery Serv., Inc. v. Zurich Am. Home Ins. Co. (In re: Howard Delivery Serv., Inc.), No. 3:03CV61, at *11 (N.D.W.VA.) (the “District Opinion”). Zurich has now appealed to this Court, contending that the Zurich Claim is entitled to priority status because the unpaid insurance premiums embodied therein constitute “contributions to an employee benefit plan arising from services rendered” under the Statute. We possess jurisdiction to consider Zurich’s appeal because, in these circumstances, the District Opinion and the corresponding Judgment in a Civil Case, filed on December 22, 2003, constitute a final decision of the district court under 28 U.S.C. § 158(d).[6]
II.
Zurich’s appeal concerns the meaning and application of the Statute, which constitutes a question of law that we review de novo. See Loudoun Leasing Dev. Co. v. Ford Motor Credit Co., 128 F.3d 203, 206 (4th Cir.1997). In construing the meaning of a statutory provision, we are obliged to utilize the well-settled two-step process explained in a long series of decisions, including Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir.2004). First, we must ascertain whether the language of the statutory provision is plain or ambiguous. If the provision is drawn in plain and unambiguous terms, we simply apply the statute’s plain meaning. Alternatively, if the language of the statutory provision is am *232 biguous, we proceed to the second step in the process and seek to ascertain the meaning intended by Congress when the provision was enacted. In the context of the Bankruptcy Code, it is presumed that a debtor’s resources should be equally distributed among the creditors, and statutory priorities are therefore to be narrowly construed. See In re: Merry-Go-Round Enter., Inc., 180 F.3d 149, 157 (4th Cir.1999) (observing general “presumption in bankruptcy eases that all of a debtor’s limited resources will be equally distributed among creditors”).
III.
In assessing whether the Zurich Claim is entitled to priority status under the Statute, I first briefly review the split of authority in the federal courts as to whether claims for unpaid insurance premiums are so entitled. As explained below, I am of the view that the pertinent statutory terms — “contributions,” “employee benefit plan,” and “services rendered” — are plain and unambiguous. I am therefore obliged to apply the Statute to the Zurich Claim and, in so doing, conclude that it is entitled to priority status thereunder.
A.
The issue presented by Zurich has been previously considered by several other courts, and they disagree on whether a debtor’s unpaid premiums for workers’ compensation insurance constitute “contributions to an employee benefit plan arising from services rendered,” and on whether a bankruptcy claim for such premiums is thereby entitled to fourth-level priority status under the Statute. Compare Travelers Prop. Cas. Corp. v. Birmingham-Nashville Express, Inc. (In re: Birmingham-Nashville Express, Inc.), 224 F.3d 511 (6th Cir.2000) (denying priority status), State Ins. Fund v. S. Star Foods, Inc. (In re: S. Star Foods, Inc.), 144 F.3d 712 (10th Cir.1998) (same), and Employers Ins. of Wausau, Inc. v. HLM Corp. (In re: HLM Corp.), 62 F.3d 224 (8th Cir.1995) (same), with Employers Ins. of Wausau v. Plaid Pantries, Inc., 10 F.3d 605 (9th Cir.1993) (affording priority status). This disagreement among the courts rests upon opposing constructions of the Statute: the Ninth Circuit (and various district and bankruptcy courts) deeming the Statute to be unambiguous and affording priority to such claims; while the Sixth, Tenth, and Eighth Circuits (as well as several district and bankruptcy courts) have concluded that the Statute’s legislative history precludes priority status being accorded to such claims. These divergent views deserve some further examination.
1.
The first line of decisions addressing bankruptcy claims for unpaid insurance premiums, including the Ninth Circuit’s decision in Plaid Pantries, has found the Statute to be unambiguous, and thus reasoned that legislative history need not be considered. Relying on the Statute’s plain meaning, those courts have concluded that the Statute accords priority status to such claims as “contributions to an employee benefit plan arising from services rendered” under the Statute. See Plaid Pantries, 10 F.3d at 607 (according priority status to claim for unpaid workers’ compensation premiums); Saco, 711 F.2d at 449 (according priority status to claim for unpaid employee group life, health, and disability insurance premiums); Ivey v. Great W. Life & Annuity Ins. Co., 308 B.R. 752 (M.D.N.C.2004), appeal docketed, No. 04-1576 (4th Cir.2004) (according priority status to claim for unpaid health insurance premiums); Principal Mut. Life Ins. Co. v. Joint Comm. of Unsecured Creditors (In re: CirrusCorp), 196 B.R. 76 *233 (S.D.Tex.1996) (same); Allegheny Int’l, Inc. v. Metro. Life Ins. Co., 145 B.R. 820 (W.D.Pa.1992) (according priority status to claim for unpaid life insurance premiums); Official Labor Creditors Comm. v. Jet Fla. Sys., Inc. (In re: Jet Fla. Sys., Inc.), 80 B.R. 544 (S.D.Fla.1987) (according priority status to claim for unpaid reimbursements for covered medical expenses); In re: Integrated Health Servs., Inc., 291 B.R. 611 (Bankr.D.Del.2003) (according priority status to claim for unpaid workers’ compensation insurance premiums); In re: A.B.C. Fabrics of Tampa, Inc., 259 B.R. 759 (Bankr.M.D.Fla.2001) (according priority status to claim for unpaid reimbursements for covered medical expenses); In re: Braniff Inc., 218 B.R. 628 (Bankr.M.D.Fla.1998) (according priority status to claim for unpaid health and life insurance premiums); Official Creditors’ Comm. of Lummus Indus., Inc. v. Blue Cross & Blue Shield of Ga., Inc. (In re: Lummus Indus., Inc.), 193 B.R. 615 (Bankr.M.D.Ga.1996) (according priority status to claim for unpaid health insurance premiums); see also Perlstein v. Rockwood Ins. Co. (In re: AOV Indus., Inc.), 85 B.R. 183 (Bankr.D.D.C.1988) (noting, albeit in dicta, that unpaid workers’ compensation premiums are entitled to priority status).
In this series of decisions, the courts that have assessed the priority status of claims premised on unpaid workers’ compensation premiums have found such claims to be indistinguishable from claims of priority status involving other types of employer-provided insurance benefits, e.g., health, disability, or life insurance. See Plaid Pantries, 10 F.3d at 607; Integrated Health Servs., 291 B.R. at 613. Indeed, the Statute fails to distinguish between an “employee benefit plan” that an employer is statutorily required to provide to its employees, ie., workers’ compensation, and a benefit plan that an employer voluntarily decides to provide. The courts adopting the plain meaning view of the Statute have thus concluded that bankruptcy claims for unpaid workers’ compensation premiums, like those for unpaid health, disability, and life insurance premiums, are entitled to priority status under the Statute.
2.
On the other hand, three of our sister circuits, as well as several of the lower courts, have turned to and relied on aspects of the Statute’s legislative history in concluding that claims for unpaid workers’ compensation premiums are somehow different from claims for premiums to voluntarily provided benefit plans, and that claims for unpaid workers’ compensation premiums are not entitled to priority status as “contributions to an employee benefit plan” under the Statute. See Birmingham-Nashville, 224 F.3d at 517 (holding unpaid workers’ compensation premiums are not entitled to priority status); S. Star Foods, 144 F.3d at 715-17 (same); HLM Corp., 62 F.3d at 225 (same); In re: Allentown Moving & Storage, 214 B.R. 761 (E.D.Pa.1997) (same); Edward W. Minte Co. v. Franey & Parr (In re: Edward W. Minte Co.), 286 B.R. 1, 8-13 (Bankr.D.D.C.2002) (same); In re: Perk Dev. Corp. Brambury Assocs., 246 B.R. 753 (Bankr.W.D.N.Y.2000) (same); In re: Arrow Carrier Corp., 154 B.R. 642 (Bankr.D.N.J.1993) (same); see also In re: AER-Aerotron, Inc., 182 B.R. 725 (Bankr.E.D.N.C.1995) (denying priority status to claim for unpaid life insurance premiums).
Congress enacted the Statute in 1978 in an effort to abrogate two Supreme Court decisions which had construed the terms “wages” and “commissions” of the priority provision of the predecessor statute, the Bankruptcy Act of 1898. Joint Indus. Bd. of Elec. Indus. v. United States, 391 U.S. *234 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968); United States v. Embassy Rest., Inc., 359 U.S. 29, 79 S.Ct. 554, 8 L.Ed.2d 601 (1959). In those decisions, the Court had held that the wage priority provision of the 1898 Act failed to afford priority status to claims for contributions to bargained-for, union-operated welfare and annuity funds. Joint Indus., 39 U.S. at 228; Embassy Rest., 359 U.S. at 33, 79 S.Ct. 554. Congress, in enacting the Statute, sought to ensure that the employees of bankrupt employers received priority on claims not just for their wages, but also for wage substitutes provided through “employee benefit plants]”. S. Star Foods, 144 F.3d at 715-16 (relying on H.R.Rep. No. 95-595, at 187, 357 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6313 and S.Rep. No. 95-989, at 69 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5855).
The line of decisions relying on the Statute’s legislative history have generally concluded that a workers’ compensation plan does not constitute a wage substitute and is not an “employee benefit plan” under the Statute, because workers’ compensation is statutorily mandated.[7] See HLM Corp., 62 F.3d at 225; S. Star Foods, 144 F.3d at 715; Birmingham-Nashville, 224 F.3d at 517. For example, the Sixth Circuit observed that: “[wjorkers’ compensation is not a wage substitute; rather, it is an award arising out of a work-related injury owed by an employer.” Birmingham-Nashville, 224 F.3d at 517 (emphasis added). More specifically, because workers’ compensation coverage is statutorily mandated, an employer cannot offer its employees higher wages as a substitute for those benefits. HLM Corp., 62 F.3d at 226. Because employees are, in that circumstance, entitled to workers’ compensation benefits under law, the Eighth Circuit observed that, “even if the employer were illegally uninsured, the employers’ participation in a workers’ compensation insurance fund cannot be understood as a true benefit.” Id.
B.
In order to ascertain which of these competing views to adopt, I must, pursuant to the applicable principles of statutory construction, first decide whether the Statute has a plain and unambiguous meaning. Newport News Shipbldg., 376 F.3d at 248; see Hartford Underwriters Ins. Co. v. Union Planters Bank, 580 U.S. 1, 7, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (admonishing that “when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms”) (citations omitted). In enacting the Statute, Congress failed to define the terms “contributions,” “employee benefit plan,” or “services rendered,” as they are used therein, nor has the Supreme Court construed those terms. Where, as here, a statutory provision fails to expressly define the terms to be assessed, we are obliged to construe them in accordance with their ordinary or natural meaning. FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).
In these circumstances, in order to ascertain whether the Statute is plain or ambiguous, I will assess separately the ordinary and natural meanings of the pertinent statutory terms, i.e., “contributions,” “employee benefit plan,” and “ser *235 vices rendered.” As explained below, although I am sensitive to the principle that bankruptcy priorities are to be interpreted narrowly, see In re: Merry-Go-Round Enter., Inc., 180 F.3d 149, 157 (4th Cir.1999), each of those terms is plain and unambiguous, and the Zurich Claim is therefore entitled to priority status under the Statute.
1.
First of all, an accepted and ordinary meaning of the term “contributions” is that they include sums “paid by an employer to [a] group-insurance fund ... for employees.” Webster’s Third New International Dictionary 496 (reprint 1993) (1981). Importantly, a contribution need not be a payment that is voluntarily made. Birmingham-Nashville, 224 F.3d at 516 (observing that “employer’s statutorily mandated payment to an employee benefit plan ... is no less of a ‘contribution’ to such a fund simply because it is mandated by statute”). Applying this meaning of the term “contributions” to these circumstances, Howard’s unpaid premiums on the Policy constitute sums to be paid by an employer to a group insurance fund for workers’ compensation insurance, and constitute “contributions” within the meaning of the Statute.[8]
2.
Second, the insurance coverage provided by the Policy for Howard’s workers’ compensation liabilities constitutes an “employee benefit plan” as that term is used in the Statute. As explained below, I reach this conclusion because a workers’ compensation plan constitutes an “employee benefit plan” under the Statute, and because the insurance coverage purchased by an employer to cover such a plan is also an “employee benefit plan.”[9]
a.
A workers’ compensation insurance program constitutes a detailed contractual arrangement enabling an employer to pro *236 vide health, disability, lost-wage, and death benefits to employees who are injured in the course of their employment. As the bankruptcy and district courts recognized in this case, the benefits of workers’ compensation coverage plainly inure to those employees who receive payments thereunder. See Bankruptcy Opinion at *5 (workers’ compensation is “unarguably a benefit for employees”); District Opinion at *11 (workers’ compensation is “of great benefit to employees”). Next, a “benefit” is, inter alia, “a cash payment provided for under an ... insurance plan,” or “financial help in time of sickness, old age, or unemployment.” Webster’s Third 204. Under West Virginia workers’ compensation law, employees receive benefits from an insurance plan, such as that provided by the Policy, to assist them when work-related injuries result in sickness or unemployment. See Repass v. Workers’ Comp. Division, 212 W.Va. 86, 569 S.E.2d 162, 168-69 (2002) (“The Act is designed to compensate injured workers ... in order that injured workers and those who depend upon them for support shall not be left destitute during a period of disability.”). Finally, a “plan” constitutes, inter alia, “a detailed and systematic formulation of a large-scale campaign or program of action.” Webster’s Third 1729. Applying that definition, workers’ compensation insurance, as a detailed arrangement between employees and employers, readily constitutes such a “plan.” Workers’ compensation insurance is thus an “employee benefit plan” within the plain meaning of that statutory term.
I acknowledge, and respectfully so, that three of the four courts of appeals to face this question have disagreed, taking the view that workers’ compensation insurance coverage does not constitute an “employee benefit plan.” We are unable to decide such an issue by a poll of the courts, however, and I view the contrary reasoning of those courts as unpersuasive. See McMellon v. United States, 387 F.3d 329 (4th Cir.2004) (en banc) (Luttig, J., dissenting) (“Judicial interpretation is not an exercise in poll-taking.”) The courts adopting the contrary view have relied on aspects of the Statute’s legislative history to interpret the term “employee benefit plan,” and they have consistently done so without first deciding that the statutory term is ambiguous. Indeed, the Eighth Circuit concluded that the plain meaning of the term “employee benefit plan” militated against affording priority based upon the legislative history of the Statute. HLM Corp., 62 F.3d at 225 (observing that since Bankruptcy Code did not define term, “the legislative history is instructive and illuminating” without addressing term’s plain meaning). The Tenth Circuit simply concluded that a split in the circuits was sufficient evidence that the statutory provision was ambiguous. S. Star Foods, 144 F.3d at 715 (“The split in the circuits is, in itself, evidence of the ambiguity of the phrase ‘contributions to an employee benefit plan’... .”).[10] And the Sixth Circuit reasoned that the term “employee benefit plan” is ambiguous by first looking, inappropriately, to the Statute’s legislative history. Birmingham-Nashville, 224 F.3d at 517 (holding that “it is not at all clear” what “employee benefit plan” means and citing Embassy Restaurant decision for authority that term is limited to “wage substitutes,” without addressing plain *237 meaning). In our view, these decisions fail to heed the Court’s admonishment that “when the [Bankruptcy Code’s] language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Hartford Underwriters, 530 U.S. at 7, 120 S.Ct. 1942 (citations omitted).
The language of the Statute is plain and unambiguous — it does not require that compensation received by an employee be a “wage substitute,” nor does it exclude an employee benefit plan that is statutorily mandated.[11] Put simply, we are not entitled to require an employee benefit plan to qualify as a wage substitute or to require that participation in such a plan be voluntary, thereby engrafting limitations on statutory provisions in order to “achieve that which Congress is perceived to have failed to do.” United States v. Locke, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985); see also Pavelic & LeFlore v. Marvel Entm’t Group, 493 U.S. 120, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (“our task is to apply the text, not improve on it”). In sum, the plain language of the Statute accords priority to contributions made to an “employee benefit plan” and, applying the relevant statutory provisions, workers’ compensation insurance coverage constitutes such a plan.
b.
Turning next to the question of whether this particular Policy constitutes an “employee benefit plan,” within the meaning of the Statute, I conclude that it does. The Policy constitutes such a “plan,” in that it is a “detailed and systematic formulation of a large-scale ... program of action.” Webster’s Third 1729. The district court concluded otherwise, finding that the Policy failed to benefit Howard’s employees, and that it benefitted Howard only, because “the insurance is designed to shield Howard from the liability of providing workers’ compensation benefits.” District Opinion at *10.
Notwithstanding the benefits accruing to Howard under the Policy, the insurance coverage provided thereunder plainly inured to the benefit of Howard’s employees. Zurich was obliged to pay Howard’s workers’ compensation claims and be partially reimbursed by Howard pursuant to the Policy’s provisions. As a result, the Policy directly benefitted the Howard employees who received compensation. See Ivey v. Great W. Life & Annuity Ins. Co. (In re: Ivey), 308 B.R. 752, 757 (M.D.N.C.2004) (“the plain language of the statute ... include[s] priority for an insurance company which has expended its own funds to make the plan work”). That the Policy may also have benefitted Howard is not controlling, because it unquestionably provided an “employee benefit” under the plain and unambiguous meaning of that term.
Nearly all the courts addressing the issue have ruled that claims for unpaid health, disability, and life insurance premiums are entitled to priority status under the Statute, and that those types of insurance constitute a benefit to employees.[12] *238 See supra Part III.A.1. And of import here, the coverage provided by workers’ compensation insurance is indistinguishable, under the Statute, from those other types of insurance. As Justice Breyer aptly observed in Saco: “[t]o allow the insurer to obtain its premiums through priority would seem the surest way to provide employees with the policy benefits to which they are entitled.” 711 F.2d at 449. As with health, disability, and life insurance, workers’ compensation coverage conveys a benefit to employees, and the Zurich Claim arises from an “employee benefit plan.”
3.
Finally, Howard asserts that the meaning of the term “services rendered,” as found in the Statute, is limited to those services rendered by its employees and does not include services rendered by an insurer such as Zurich. See Edward W. Minte Co. v. Franey & Parr (In re: Edward W. Minte Co.), 286 B.R. 1, 8-13 (Bankr.D.D.C.2002).[13] It contends that, because the Zurich Claim arises from the provision of insurance coverage by Zurich, rather than from services rendered by Howard’s employees, the Claim does not fall within the plain meaning of “services rendered” under the Statute. Id.
I reject Howard’s contention on this point because it seeks to inappropriately limit the breadth of the relevant term. I am again content to follow Justice Breyer’s guidance in Saco that insurers may be entitled to priority under the Statute. 711 F.2d at 449. Regardless of whether the term “services rendered” refers to the provision of insurance or is limited to employees’ services, the Zurich Claim satisfies this aspect of the Statute. It is only because workers were employed by Howard (and providing services to it) prior to the bankruptcy filing that Howard’s obligation to provide insurance and pay the necessary premiums arises. The Zurich Claim thus arises from “services rendered” by Howard’s employees, ie., their services occasioned Howard’s obligation to purchase workers’ compensation insurance, and by Zurich as well, ie., providing insurance.[14]
IV.
Pursuant to the foregoing, the Zurich Claim is entitled to priority under the Statute. I therefore concur in the judgment to reverse the decision of the district court and remand for such further proceedings as may be appropriate.
SHEDD, Circuit Judge,
concurring:
While I appreciate Judge King’s well-crafted opinion and concur in its result, I base my opinion on a different rationale. Our paths diverge on the issue of whether the phrase “employee benefit plan” in § 507(a)(4) is ambiguous. Judge King *239 finds the individual words of this phrase to be unambiguous, but I find the phrase as a whole to be ambiguous. In ascertaining the meaning of this ambiguous phrase, I rely on specific evidence in the statute’s legislative history showing that Congress likely intended to import the definition of the term “employee benefit plan” from ERISA to this particular bankruptcy priority provision. Under ERISA, “employee benefit plan” includes workers’ compensation benefit plans. Thus, when Congress enacted § 507(a)(4), it granted priority protection to contributions to workers’ compensation plans.
The “first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (holding that the term “employee” in Title VII is ambiguous in its context). In determining whether a statute is plain or ambiguous, a court must consider the specific language employed, the specific context of that language, and the broader context of the statute as a whole. Id. at 341, 117 S.Ct. 843. A statute is ambiguous if its language is susceptible to more than one reasonable interpretation. Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir.2004). “If the statutory language is clear and unambiguous, our inquiry ends there.” Faircloth v. Lundy Packing Co., 91 F.3d 648, 653 (4th Cir.1996). If, however, a statute is ambiguous, resort to legislative history is appropriate. BedRoc Ltd. v. United States, 541 U.S. 176, 186, 124 S.Ct. 1587, 1595, 158 L.Ed.2d 338 (2004).
In deciding that § 507(a)(4) is unambiguous, Judge King picks and chooses from accepted dictionary definitions of the words “benefit” and “plan” and concludes that an “employee benefit plan” is any “cash payment provided for under an ... insurance plan” or “financial help in time of sickness, old age, or unemployment” to an employee that is paid according to “a detailed and systematic formulation of a large-scale campaign or program of action.” Although this definition might be one reasonable interpretation of these words, it is not the only reasonable interpretation. For instance, in common usage the phrase “employee benefit plan” can refer to a package of “fringe benefits,” which may or may not include workers’ compensation benefits. See, e.g., 29 C.F.R. § 1625.10(b) (2005) (stating that, for purposes of the Age Discrimination in Employment Act, an “employee benefit plan” is a plan that “provides employees with what are frequently referred to as ‘fringe benefits’ ”); Employee Fringe Benefits: Tax Policy Issues, Management Matters, Sept. 1, 1992 (listing the four most common “fringe benefits” as pensions, health insurance, life insurance, and flexible benefit programs). Moreover, the context of the statute suggests that Congress could have intended the phrase “employee benefit plan” to be a term of art having a specific meaning different from the sum of what these three words mean individually. Accordingly, because the term “employee benefit plan” is susceptible to more than one reasonable interpretation, it is appropriate to consider the legislative history of § 507(a)(4) to determine what Congress intended by using this particular language. See BedRoc, 124 S.Ct. at 1595.
As originally introduced in 1975, the new priority for “employee benefit plans” included “allowed claims for contributions to pension, insurance, or similar employee benefit plans_” H.R. 31, 94th Congress (1975) (emphasis added). In hearings before the Judiciary Committee of the United States House of Representatives, one important witness — a union official representing more than a dozen affiliated *240 unions and several million tradesmen— suggested that the legislation could be interpreted too narrowly and should therefore be amended “so as not inadvertently to exclude certain other types of plans.” Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 82 Before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, 94th Cong. 2452 (1976). To broaden the coverage of the priority, this witness urged Congress to delete the words “pension, insurance, or similar” and instead parallel the language of ERISA. Id. Thus, “[t]he contributions for which priority treatment should be granted should be any contributions to an employee benefit plan as defined in ERISA § 3(3).” Id. at 2455. (emphasis added).
The priority was enacted into law two years later as part of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549 (codified at 11 U.S.C. § 507(a)(4)). Congress enacted the exact wording proposed in the House Judiciary Committee hearing two years earlier, so that the priority applies to “allowed unsecured claims for contributions to an employee benefit plan.” 11 U.S.C. § 507(a)(4).
In this particular instance, the best evidence as to what Congress intended by incorporating the term “employee benefit plan” comes not from attempting to ascertain the overriding purposes and aims of the legislation.[1] Instead, we have a direct indication from the legislative history that Congress intended to give this particular term the same meaning that it had given to that same term just four years earlier when it enacted ERISA. See Employee Retirement Income Security Act of 1974, Pub.L. 93-406, 88 Stat. 829. Accordingly, I conclude that Congress intended the phrase “employee benefit plan” in the bankruptcy priority provision to have the same meaning that it has in ERISA.[2]
ERISA § 3(3) defines the term “employee benefit plan” to mean “an employee welfare benefit plan or an employee pension benefit plan.... ” 29 U.S.C. § 1002(3) (emphasis added). An “employee welfare benefit plan” is:
any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or *241 otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....
29 U.S.C. § 1002(1). Based on these definitions, the workers’ compensation insurance plan at issue in this case qualifies as an “employee benefit plan.” The plan at issue was established by Howard Delivery Service through the purchase of insurance and was maintained for the purpose of providing benefits in the event of sickness, accident, disability or death of the employees.[3]
Because Congress enacted an ambiguous statute, we must ascertain from the statute’s legislative history which types of plans Congress meant to include in this new bankruptcy priority. In my view, the best evidence reveals that Congress intended the term “employee benefit plan” in § 507(a)(4) to share the same meaning as “employee benefit plan” under ERISA. A workers’ compensation insurance plan is an “employee benefit plan” under ERISA, and it necessarily follows that a workers’ compensation plan qualifies as an “employee benefit plan” under § 507(a)(4) of the Bankruptcy Code. Accordingly, I concur with Judge King that the Zurich Claim is entitled to priority and that the judgment of the district court should be reversed.

. Although not relevant to this appeal, Howard also purchased employer's liability and automobile liability policies from Zurich.

. The Policy provided coverage to Howard on a "claims incurred” basis; that is, claims incurred while the Policy was in effect were covered, regardless of when such claims might be made. The Policy was a high-deductible insurance plan, requiring Howard to reimburse Zurich for all losses up to $250,000.

. Zurich filed another claim in Howard's bankruptcy proceeding on May 9, 2002 — an unliquidated, unsecured, and nonpriority claim — which is not relevant to this appeal.

. The amount of the Zurich Claim is premised on an actuarial analysis of Zurich's exposure to liability for claims incurred while the Policy was in effect. The Zurich Claim was admittedly slightly overstated, because it included a small amount owed under the automobile liability policy and covered a time period slightly in excess of 180 days.

. Creditors holding valid claims of fourth-level priority may recover from the general assets of a bankrupt’s estate following, first, *231 secured creditors, and second, unsecured creditors with claims qualifying under the first three levels of priority established by § 507(a). See In re: Federal’s Inc., 553 F.2d 509, 518 (6th Cir.1977). The first three levels of priority are: (1) administrative expenses and fees of the estate, (2) claims arising from the ordinary course of business, and (3) wages and salaries up to $4,925. See 11 U.S.C. § 507(a)(l)-(9) (creating nine priority levels).

. Subsection (d) of § 158 provides jurisdiction in the courts of appeals "from all final decisions, judgments, orders, and decrees [by a district court] entered under subsection (a)." It is generally acknowledged that the “finality" requirement of § 158(d) is to be interpreted in light of the special circumstances of bankruptcy proceedings. See Comm. of Daikon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 241 (4th Cir.1987). And, as explained by Justice Breyer (then serving on the First Circuit) in a seminal decision on § 158(d) jurisdictional issues, In re: Saco Local Development Corp., a district court’s ruling in a priority dispute is typically an appealable ruling. 711 F.2d 441, 445 (1st Cir.1983) ("[A] ‘final judgment, order, or decree' ... includes an order that conclusively determines a separable dispute over a creditor’s claim or priority.”) (emphasis added).
The district court's ruling that the Zurich Claim was not entitled to priority effectively concluded the dispute between Zurich and Howard because the Zurich Claim was then rendered valueless. If the Zurich Claim is not now accorded priority status, Zurich becomes another general unsecured creditor of Howard, and it is agreed that Zurich would then receive nothing from Howard’s bankrupt estate. Furthermore, if it loses this appeal, Zurich has agreed to withdraw the Zurich Claim.

. None of the decisions taking this view has held that an "employee benefit plan” under the Statute must have resulted from collective bargaining. Indeed, the Sixth Circuit specifically rejected such an assertion, agreeing with the First Circuit’s decision in Saco, stating: "we do not hold that to qualify for priority under § 507(a)(4) the wage substitute must actually be the product of collective bargaining.” Birmingham-Nashville, 224 F.3d at 517 (relying on Saco, 711 F.2d at 449).

. In concluding that the unpaid insurance premiums owed to Zurich are contributions, I necessarily reject the view that a contribution does not include the unilateral purchase of such a product or service, because a contribution, as defined by Random House, means inter alia, giving "along with others." Birmingham-Nashville, 224 F.3d at 515 (quoting Random House Dictionary of the English Language 308 (1981) (emphasis added)). Because the bankrupt employer in the Birmingham-Nashville proceeding was, like Howard, the sole purchaser of an insurance policy, its unpaid premiums were deemed not to constitute contributions. Id. I see this as an overly narrow interpretation of the term "contributions,” precluding the existence of a sole contributor and denying priority status to claims for unpaid life, health, and disability insurance premiums. Claims for such unpaid insurance premiums have been accorded priority status by the First Circuit in Saco, and by multiple district and bankruptcy courts. See Saco, 711 F.2d at 441; see also supra Part III.A.1.

. Certain bankruptcy courts have found the ERISA definition of "employee benefit plan” to be useful in construing the meaning of the Statute, because, under ERISA, workers’ compensation is identified as an "employee benefit plan.” See 29 U.S.C. §§ 1002(1)-(3), 1003(b); see, e.g., Allegheny Int’l, Inc. v. Metro. Life Ins. Co. (In re: Allegheny Int’l, Inc.), 138 B.R. 171, 173-74 (Bankr.W.D.Pa.1992), aff'd, 145 B.R. 820 (W.D.Pa.1992). However, "[mjost federal courts ... have rejected this reasoning.” Birmingham-Nashville, 224 F.3d at 517. Importantly, the Supreme Court has held that, for purposes of construing terms found in the Bankruptcy Code, it is inappropriate to incorporate characterizations of a term in another statute absent some congressional indication that this was intended. United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 225, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996). I therefore decline to rely upon the ERISA definition.

. I see this point as unpersuasive. As Justice Thomas has aptly observed, "[a] mere disagreement among litigants over the meaning of a statute does not itself prove ambiguity; it usually means that one of the litigants is simply wrong.” Bank of A. Nat’l Trust & Sav. Ass'n v. 203 N. LaSalle St. P’ship, 526 U.S. 434, 461, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1991) (Thomas, J., concurring).

. See also In re: Integrated Health Servs., Inc., 291 B.R. 611 (Bankr.D.Del.2003) (making comprehensive analysis of statute and pertinent legislative history, and according priority status to claim for unpaid workers’ compensation insurance premiums).

. In resolving this issue I am impressed with the reasoning of the recent decision of the Middle District of North Carolina on the question of whether a claim for unpaid insurance premiums is entitled to priority status. Ivey, 308 B.R. at 755-57. That court makes a comprehensive analysis of this issue, concluding that such a claim is entitled to priority *238 status under the Statute. Id. at 756 (observing that statutory language "appears to allow priority for insurers or any other parties who make contributions to the plan”). Because the court deemed the "plain language” of the Statute to be unambiguous, it had no reason to "look beyond the text of the statute to the legislative history.” Id. at 757.

. Under the Minte decision, on which Howard relies for this contention, only employees or administrators of employee benefit plans who represent employee interests may recover under the Statute. 286 B.R. at 10.

. Because the language of the Statute is plain and unambiguous, I decline Howard's invitation to examine its legislative history. Conducting such an analysis "would require a radical abandonment of our long-standing precedents that permit resort to legislative history only when necessary to interpret ambiguous statutory text.” BedRoc Ltd., LLC v. United States, 541 U.S. 176, 124 S.Ct. 1587, 1595, 158 L.Ed.2d 338 (2004).

. I note, however, that my approach is also consistent with the Congressional purpose and aim of the legislation. Language in the House Committee Report explaining the purpose of the new priority provision suggests that workers' compensation plans are entitled to priority. That Report states that the new priority will cover contributions and payments to plans including "health insurance programs, life insurance plans, pension funds, and all other forms of employee compensation that is not in the form of wages." H.R.Rep. No. 95-595, at 6148 (1977). Under this very broad language, workers’ compensation would qualify as "employee compensation that is not in the form of wages.”

. Relying on United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996), Judge King rejects the ERISA definition because it is "inappropriate to incorporate characterizations of a term in another statute absent some congressional indication that this was intended.” This contention ignores the indication of Congress's intent in the legislative history. The plain facts that (1) Congress was urged to make § 507(a)(4) consistent with ERISA and (2) Congress subsequently amended the provision to employ the very same term that is used in ERISA provides "some congressional indication” that "employee benefit plan” should have the same meaning in both statutes. Simply, Congress used a special term it had used in the recent past with knowledge of what that term meant.

. ERISA § 4(b)(3) further confirms that the term "employee benefit plan” includes workers' compensation plans. This code section provides: (b) The provisions of this subchap-ter shall not apply to any employee benefit plan if— (3) such plan is maintained solely for the purpose of complying with applicable workmen’s compensation laws 29 U.S.C. § 1003(b)(3) (emphasis added). In other words, all workers’ compensation plans are "employee benefit plans” under ERISA's definition, but ERISA does not govern all "employee benefit plans,” including some workers’ compensation plans. See PPG Indus. Pension Plan v. Crews, 902 F.2d 1148, 1151 (4th Cir.1990) (deciding that ERISA applies to company's employee benefit plan providing workers’ compensation benefits because it was not maintained solely for the purpose of complying with West Virginia's workers' compensation laws).