### In re PERK DEVELOPMENT CORPORATION, Brambury Associates, Debtors.

Bankruptcy Nos. 98–21910, 98–21909.

United States Bankruptcy Court, W.D. New York.

April 5, 2000.

Gregory Mascitti, Nixon Peabody, LLP, Rochester, N.Y., for debtors.

Jodi E. Briandi, Hurwitz & Fine, P.C., Buffalo, N.Y., for Liberty Mutual.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On May 19, 1998, Perk Development Corporation ("Perk") and an affiliate, Brambury Associates ("Brambury"), filed petitions initiating Chapter 11 cases. The Perk and Brambury Chapter 11 cases were jointly administered, and ultimately a consolidated Chapter 11 plan of liquidation was confirmed.

On January 28, 1999, Liberty Mutual Group ("Liberty") filed a proof of claim in the Perk Chapter 11 case (the "Liberty Claim") which asserted that $38,354.00 of the claim was entitled to priority status because this amount was for unpaid pre-petition workers' compensation insurance premiums that constituted contributions to an employee benefit plan within the meaning and intent of Section 507(a)(4).[1]

On February 8, 2000, the attorneys for Perk filed an objection to the Liberty Claim (the "Objection") which asserted that: (1) the portion of the Liberty Claim representing unpaid pre-petition workers' compensation insurance premiums was not

---

1. Section 507(a)(4) provides that:

   (a) The following expenses and claims have priority in the following order:
   (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
   (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
   (B) for each such plan, to the extent of—
   (i) the number of employees covered by each such plan multiplied by $4,000; less
   (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.
   11 U.S.C. § 507(a)(4) (2000).

entitled to priority status under Section 507(a)(4); and (2) the Liberty Claim failed to demonstrate that any or all of the unpaid pre-petition workers' compensation premiums were for services rendered within 180 days before the date of the filing of the Perk petition.

On March 20, 2000, Liberty filed opposition (the "Opposition") to the Objection which asserted that: (1) there was a split among the Circuit Courts that had decided the issue as to whether claims for unpaid pre-petition workers' compensation insurance premiums were contributions to an employee benefit plan within the meaning and intent of Section 507(a)(4); (2) the Ninth Circuit Court of Appeals in *Employers Insurance of Wausau v. Plaid Pantries*, 10 F.3d 605 (9th Cir.1993) (*"Plaid Pantries"*) had held that such unpaid premiums were entitled to priority status under Section 507(a)(4) because workers' compensation insurance is an employee benefit plan; (3) the Eighth Circuit Court of Appeals in *In re HLM Corporation*, 62 F.3d 224 (8th Cir.1995) (*"HLM"*) and the Tenth Circuit Court of Appeals in *In re Southern Star Foods, Inc.*, 144 F.3d 712 (10th Cir.1998) (*"Southern Star Foods"*) had held that such premiums were not contributions to an employee benefit plan and, therefore, were not entitled to priority status under Section 507(a)(4); (4) no Court within the Second Circuit had published a decision on this issue; and (5) Liberty urged the Court to accept the holding and rationale set forth in *Plaid Pantries.*

At the March 22, 2000 Hearing on the Objection, the Court indicated that: (1) it agreed with the decisions in *HLM* and *Southern Star Foods* that unpaid workers' compensation insurance premiums were not contributions to employee benefit plans, so that the portion of the Liberty Claim in question was not entitled to priority status under Section 507(a)(4); and (2) since there were no published decisions on

the issue within the Second Circuit, the Court would publish a written Decision & Order.

By letter dated March 30, 2000, and filed with the Court on March 31, 2000, the attorneys for Liberty Mutual indicated that it withdrew the Opposition and consented to treatment of that portion of the Liberty Claim as a nonpriority unsecured claim.[2]

## DISCUSSION

I hold that the unpaid pre-petition workers' compensation insurance premiums due to Liberty are not entitled to priority status under Section 507(a)(4) because: (1) the priorities set forth in Section 507 of the Bankruptcy Code must be narrowly construed *See Joint Industry Board v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968) and *Trustees of the Amalgamated Insurance Fund v. McFarlin's Inc.*, 789 F.2d 98 (2d.Cir.1986); (2) workers' compensation coverage is statutorily mandated in New York State, and Perk and Liberty acknowledged that there were no special circumstances in connection with the business operations of Perk which indicated that such coverage was an additional fringe benefit or wage substitute; (3) the Perk employees could not have waived workers' compensation coverage to secure higher wages; (4) I agree with the Courts in *HLM* and *Southern Star Foods* that the legislative history to Section 507(a)(4) indicates that it was the intention of Congress in enacting this Subsection to provide priority status for fringe benefits that were accepted in lieu of wages; (5) I am otherwise fully in accord with the rationales set forth by the Courts in their decisions in *HLM* and *Southern Star Foods*, including the Bankruptcy and District Court decisions in *HLM.*

2. Since the Court had already ruled on the record on the Objection and Opposition, the letter from the attorneys withdrawing the Opposition has no effect on the issuance of this Decision & Order.

## CONCLUSION

The portion of the Liberty Claim representing unpaid pre-petition workers' compensation insurance premiums shall be allowed as an unsecured claim since it is not a contribution to an employee benefit plan which would make it entitled to priority status under Section 507(a)(4).[3]

**IT IS SO ORDERED.**

3. Because of this holding, it is not necessary to determine what portion of the premiums, if any, may have been the result of services rendered within 180 days before the date of the filing of the Perk petition.