## In re BUILD TECH SYSTEMS, INC., Debtor.

## No. 02–10750.

United States Bankruptcy Court.
D. Vermont.

March 21, 2006.

Raymond J. Obuchowski, Esq., Obuchowski & Emens–Butler, Bethel, VT, for the Chapter 7 Trustee.

John C. Page, Esq., Zalinger Cameron & Lambeck, Montpelier, VT, for Vt. Blue Cross & Blue Shield.

### MEMORANDUM OF DECISION

#### Overruling the Trustee's Objection to Claim

COLLEEN A. BROWN, Bankruptcy Judge.

On September 6, 2005, Raymond J. Obuchowski, in his capacity as Chapter 7 trus-

tee of the bankruptcy estate for Build Tech Systems, Inc. (the "Trustee") filed an omnibus objection to claims that included an objection to the claim of Blue Cross and Blue Shield of Vermont ("Blue Cross") on the basis that the asserted priority claim for unpaid insurance premiums was not eligible for priority claim status (doc. # 105) (the "Trustee's Objection"). Blue Cross filed a memorandum opposing the Trustee's Objection asserting that since its proof of claim ("POC") is for insurance premiums owed by Build Tech Systems, Inc. (the "Debtor") for health insurance benefits Blue Cross provided to the Debtor's employees, its is entitled to priority status under § 507(a)(4) as a contribution to an employee benefit plan (doc. # 107). The Court held a hearing, the Trustee and Blue Cross filed additional memoranda of law, as well as a supplemental statement of undisputed facts (doc. # 123), and the Court took the matter under advisement. For the reasons set forth below, the Court finds a claim for health insurance premiums owed for a debtor's employees is entitled to priority under § 507(a)(4), and overrules the Trustee's objection.

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 157(b)(2)(B).

### BACKGROUND FACTS

The pertinent facts are not in dispute. The Debtor filed a voluntary chapter 7 petition on May 31, 2002 (the "Petition Date") (doc. # 1). The Debtor provided health insurance benefits to its employees through the purchase of a group health insurance policy from Blue Cross (doc. # 113, ¶ 1). The Debtor voluntarily offered health insurance coverage as a benefit of employment and not under the terms of any statute or labor agreement (*Id.*). Under the Debtor's employee health insurance plan, the Debtor administered the enrollment of its employees and paid the premiums due to Blue Cross (doc. # 113, ¶ 2). Blue Cross issued monthly invoices for premiums due, based on actual enrollment (*Id.*). Blue Cross did not receive any premium payments directly from the Debtor's employees (*Id.*).

According to its records, the Debtor ceased business operations on February 28, 2002 (doc. # 113 ¶ 4, doc. # 124 exh. 1). Employees were informed verbally that the Debtor would no longer provide health insurance benefits and that employees should contact Blue Cross if they wished to continue their coverage (*Id.*). No written notice was given to employees indicating the status of their health insurance (*Id.*). The Debtor paid no additional premiums to Blue Cross but failed to request that Blue Cross cancel the group coverage at that time (*Id.*). The Debtor actually continued operations on at least one construction project through the date of the bankruptcy filing (doc # 123 ¶ 5). On May 8, 2003, Blue Cross cancelled the Debtor's employee policy based on the Debtor's failure to pay the premiums (doc. # 113, ¶ 5). From March 1, 2002 through May 8, 2002 (referred to herein as the "POC Period"), the Debtor was billed $17,486.17 for premiums; that sum remains unpaid (*Id.*). The Trustee does not dispute the amount of Blue Cross' claim for the POC Period, but does dispute that Blue Cross' claim is entitled to priority; he asserts the claim should be treated as a general unsecured claim (doc. # 105, ¶ 5).

During the POC period, Blue Cross remained fully liable for all benefits due under the contracts with the Debtor's employees and actually paid $6,931.67 in benefits for claims submitted by the Debtor's employees during that period (doc. # 113, ¶ 6). Blue Cross did not deny any claims during the POC Period due to the Debtor's failure to pay the required premiums (*Id.*).

## DISCUSSION

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes *prima facie* evidence of the validity and amount of the claim. FED. R. BANKR. P. 3001(f). However, if evidence is introduced in opposition to a claim, the claimant is required to prove its claim by a preponderance of the evidence. *In re Sabre Shipping Corp.*, 299 F.Supp. 97, 99 (S.D.N.Y.1969) (*citing In re George R. Burrows, Inc.*, 156 F.2d 640 (2d Cir.1946)). In the instant case, the Trustee's sole objection is to the priority status of the POC, he does not dispute the amount owed to Blue Cross. Thus, the only issue before the Court is whether Blue Cross' asserted claim is a "contribution to an employee benefit plan," and hence entitled to priority treatment.

Pursuant to § 507(a)(4)[1], claims for contributions to an employee benefit plan are entitled to priority as follows:

(a) The following expenses and claims have priority in the following order:

. . .

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,925; less

(ii) the aggregate amount paid to such employees under subparagraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

### 1. Whether Premiums Owed by the Debtor to an Insurer for Employee Health Insurance Coverage Constitute Contributions to an Employee Benefit Plan under § 507(a)(4)

The Trustee claims that the applicable case law is split on the issue of whether premiums owed by a debtor/employer to an insurer providing insurance coverage constitute "contributions to an employee benefit plan" under § 507(a)(4). The Trustee also asserts that there is no authority within this District for the proposition that the claims of the insurance company, rather than the employee, are entitled to priority.

The cases the Trustee relies upon in support of his argument are distinguishable from the instant case. For example, the Trustee relies upon *In re Perk Dev. Corp.*, 246 B.R. 753 (Bankr.W.D.N.Y.2000). In that case, the debtor objected to its insurer's asserted priority claim for unpaid premiums for workers' compensation insurance premiums on the basis that the claim was not entitled to priority status under § 507(a)(4). *In re Perk Dev. Corp.*, 246 B.R. at 753–54. The *Perk* court held that the unpaid pre-petition workers' compensation insurance premiums were not entitled to priority status because workers' compensation coverage is statutorily mandated and no special circumstances existed in that case to demonstrate that the cover-

---

1. Unless otherwise indicated, all statutory references are to the United States Bankruptcy Code in effect prior to October 17, 2005, since this case was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (the "BAPCPA"). Under the BAPCPA, the relevant provision is § 507(a)(5).

age was an additional fringe benefit or wage substitute. *Id.* at 754. Contrary to the facts of *Perk*, the Debtor in this case voluntarily provided health insurance coverage to its employees. Therefore, the Court finds this case to be inapposite to the instant objection to claim.

The Trustee also relies upon *In re Montaldo Corp.*, 207 B.R. 112 (Bankr.M.D.N.C. 1997), *rev'd*, 232 B.R. 853 (M.D.N.C.1997). At issue in *Montaldo* were the unpaid premiums for group health and life insurance coverage for the debtor's employees. *Id.* at 112. The bankruptcy court there held that the unpaid pre-petition health and life insurance premiums were not entitled to priority because the premiums were not "contributions," that a policy of insurance was not an "employee benefit plan," and that the premiums owed did not result from "services rendered." *Id.* However, the district court disagreed and reversed the bankruptcy court, ruling that the unpaid pre-petition health and life insurance premiums were entitled to priority under § 507(a)(4). 232 B.R. at 855. Thus, the Court finds that the holding of this case does not support the Trustee's argument.

Although the Second Circuit has not addressed whether unpaid pre-petition health insurance premiums are entitled to priority under § 507(a)(4) or whether the priority claim belongs to the insurer or the debtor's employees, the Court finds excellent guidance on this question in the law enunciated by the First Circuit. In *In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir.1983), the debtor voluntarily provided its employees with group life, health, and disability insurance. In holding that the unpaid life, health and disability premiums were entitled to priority status under § 507(a)(4), the court recognized:

> "Congress' object in enacting § 507(a)(4) was to extend the 1898 Act's wage priority to new forms of compensation, such as insurance and other fringe benefits. Insurance is no less a fringe benefit because it is granted by an employer 'unilaterally' rather than being provided under the terms of a collective bargaining agreement. Nothing in the legislative history of § 507(a)(4) suggests the contrary."

711 F.2d at 449 (internal citations omitted). The *Saco* court also addressed whether the insurance companies had the right to obtain the priority for premiums attributable to an employee insurance plan rather than the employees themselves. The court observed:

> To allow the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled. In principle, as the trustee suggests, the employees might be required to obtain the premiums themselves and pay them over to the insurer if they so chose; in practice, however, this would simply require a more complicated administrative path to the same result. The employees cannot be harmed by the insurance company's right to assert the § 507(a)(4) priority, for the priority is expressly subordinated to the § 507(a)(3) wage priority.

711 F.2d at 449. We find this reasoning sound and determinative of the contested matter presented in the instant case.

Based upon the record before the Court, it is undisputed that the Debtor provided health care benefits to its employees and that those benefits continued to be drawn upon by the Debtor's employees until May 8, 2002, when Blue Cross terminated the Debtor's health care coverage plan due to the Debtor's payment default. Blue Cross remained fully liable for all benefits due to the Debtor's employees, under the Debtor's employee benefit plan, until May 8,

2002. Blue Cross has established that it rendered services, despite the Debtor's non-payment of premium in the amount of $17,468.17, within the POC Period. Based upon the language of the statute and well reasoned cases addressing this question, the Court finds that premiums owed by the debtor/employer to an insurer providing insurance coverage do constitute "contributions to an employee benefit plan" under § 507(a)(4). *In re Saco Local Dev. Corp.*, 711 F.2d 441, 449 (1st Cir.1983).

### 2. *Whether the Premiums Claimed on the POC are Entitled to Priority under § 507(a)(4)*

The Debtor filed for bankruptcy relief on May 31, 2002. The POC filed by Blue Cross covers the period that is four months prior to the date the Debtor filed its petition (February, March, April and May, 2002). As noted above, to the extent the premiums were paid for the period that was 180 days prior to (1) the petition date or (2) the cessation of the debtor's business, whichever is earlier, they are entitled to priority. *See* 4 Collier on Bankruptcy ¶ 507.06 [2] (15th Rev.2005). Here, the amended stipulation of facts (doc. # 123) makes clear that the Debtor did not cease doing business prior to the filing for bankruptcy relief and therefore the appropriate 180-day period is that which preceded the Debtor's filing. Therefore, the Court finds that any premiums due to Blue Cross for this 180 day period are entitled to priority under § 507(a)(4).

### CONCLUSION

For the reasons set forth above, the Court finds that the premiums the Debtor owed to Blue Cross Blue Shield of Vermont for its employees' health insurance coverage for the period that was 180 days prior to the filing of the Debtor's bankruptcy case constitute "contributions to an employee benefit plan" and are entitled to priority under § 507(a)(4).

Therefore, the Trustee's objection is overruled.